ALBANY,<br>Feb. 1810.<br><br>MILLER<br>v.<br>HACKLEY.

MILLER *against* HACKLEY, survivor of *Wigginton*, &c.

THIS was an action of *assumpsit*. The declaration contained seven counts. The first count was on a bill of exchange, dated the 17th of *March*, 1804, drawn by *Hackley* and *Fisher*, of *New-York*, in the life-time of *Wigginton*, on *Augustine H. Boughan*, of *Baltimore*,

A bill of exchange, drawn at *New-York,* on persons in *Baltimore,* was protested for *non-acceptance,* and a notary testified, that it was usual for him, in

all cases of a protest of bills, where the endorsors or drawers lived at a distance, to send a written notice of the dishonour of the bill, by post, on the evening of the same day, to the endorsor or drawer, and that he believed he had sent such a notice, in that way, to the endorsors in the present case, who resided at *New-York ;* this was held to be sufficient evidence, in the first instance, to support the averment of due notice to the endorsor, of the dishonour of the bill.

Where a bill has been protested for non-acceptance, and due notice given to the endorsor, it is no objection that the demand of payment and protest, &c. were a day too late, as they are not essential, where the liability of the party for the non-acceptance is already fixed.

A bill drawn in *New-York,* on *Charleston,* or any place of the *United States,* is an inland bill, on which a protest for non-acceptance or non-payment is not necessary ; but a regular notice of non-acceptance is requisite to charge the endorsor.

A subsequent promise to pay, under a full knowledge of a want of due notice, is a waiver of such notice. But where, speaking of several bills, on different places, and under different circumstances, the endorsor said, " he would take care of the bills, or see them paid," this was held not to be sufficient evidence of a subsequent promise to pay one of the bills, on which no notice of non-acceptance had been given. The promise ought to be explicit, and made out by clear and unequivocal evidence.

ALBANY,
Feb. 1810.

MILLER
v.
HACKLEY.

requiring him, thirty days after, to pay to *Richard S. Hackley* and *Seth B. Wigginton*, or order, one hundred and fifty dollars, &c. This count further stated, that *Hackley* and *Wigginton*, on the same day, endorsed the bill, and made it payable to *Hugh Thompson* or order, who endorsed it to the plaintiff ; the plaintiff, on the 28th *March*, 1804, caused the bill to be presented for acceptance, which was refused, and it was, in due form of law, protested for non-acceptance, of all which premises the plaintiff gave notice to *Hackley* and *Wigginton*, in the life-time of *Wigginton* ; that on the 1st of *May*, 1804, the bill was presented to *Boughan* for payment, which was refused, and the bill protested in due form of law, for non-payment ; of all which premises notice was given to *Hackley* and *Wigginton*, in the life-time of *Wigginton*, &c.

The *second* count was similar to the first, except that it stated that *Thompson* caused the bill to be presented for acceptance and payment, and to be protested, it having been remitted to him merely for collection.

The *third* count stated, that *Hackley* and *Fisher*, at *New-York*, on the 19th of *March*, 1804, drew another bill of exchange on *A.* and *J. Corrie*, of *Charleston, S. C.* by which they required them, thirty days after sight, to pay their first of exchange (second unpaid) to *Richard S. Hackley* and *Seth B. Wigginton*, or order, 310 dollars ; that *Hackley* and *Wigginton*, on the same day, endorsed the same bill, and made it payable to the plaintiff, who, on the 24th of *April*, 1804, caused it to be presented to the drawees for acceptance, which was refused ; and the same was, in due form of law, protested for non-acceptance, of all which premises the plaintiff gave notice to *Hackley* and *Wigginton*, in the life-time of *Wigginton*, and that the bill was, in like manner, presented for payment on the 26th *March*, and protested for non-payment.

The *fourth* count was on a bill of exchange, drawn by *Hackley* and *Fisher* on *A.* and *J. Corrie*, of *Charleston*, by which they requested them, fifteen days after sight of that, their first of exchange, (second unpaid,) to pay to the said *Hackley* and *Wigginton*, or order, 315 dollars ; that *Hackley* and *Wigginton*, on the same day, endorsed the bill, and made it payable to the plaintiff, who, on the 24th *April*, 1804, caused it to be presented to *A.* and *J. Corrie*, for acceptance, which was refused, and the bill was thereupon, in due form of law, protested for non-acceptance, of all which premises notice was given by the plaintiff, to *Hackley* and *Wigginton*, in the life-time of *Wigginton* ; and that afterwards, on the 12th *May*, 1804, the plaintiff caused the said bill to be presented for payment, &c. and the same was, in due form of law, protested for non-payment, &c.

The *fifth* count was on the *second* of the same bill of exchange ; and, after stating the making and endorsing of the bill, the plaintiff averred, that on the 24th *April*, 1804, at, &c. he showed and presented to *A.* and *J. Corrie*, the said first bill of exchange, mentioned in the said second of exchange, for their acceptance thereof, according to the usage and custom of merchants, and that the said *A.* and *J. Corrie*, then and there had notice of the said first of exchange, and that the said first of exchange had been, in due form of law, according to the usage and custom of merchants, endorsed, &c. and that the plaintiff was the sole owner and proprietor thereof, &c. and the said *A.* and *J. Corrie* were requested to accept the said first of exchange, the said second of exchange being wholly unpaid, &c. but they refused to accept the said first of exchange, and the same was, afterwards, to wit, &c. in /due form of law, protested for non-acceptance, according to the usage and custom of merchants, of which premises the said *Hackley* and *Wigginton*, in the life-time of the said *Wigginton*, afterwards, &c. from the said plaintiff had notice. The plaintiff averred, in like

manner, that he presented the said first of exchange for payment, which was refused, &c. and that he, thereupon, caused the said first of exchange to be protested, in due form of law, for non-payment, according to the usage and custom of merchants, of which notice was given, &c. By reason whereof the said *Hackley* and *Wigginton*, in the life-time of the said *Wigginton*, became liable to pay to the plaintiff the said sum of money mentioned in the said first of exchange, in the said last-mentioned bill of exchange specified, and also mentioned in the said last-mentioned bill of exchange, according to the tenor and effect of the said last-mentioned bill of exchange, &c. and that in consideration thereof, they promised to pay to the plaintiff the said sum of money mentioned in the said last-mentioned (second) bill of exchange, according to the tenor and effect thereof, &c.

The *sixth* count was for money had and received, to the use of the plaintiff ; and the *seventh* was for money lent.

The cause was tried at the *New-York* sittings, on the 5th *December*, 1808, before Mr. Justice *Thompson.*

The protest for non-payment of the bill, for 315 dollars, set forth in the *fourth* and *fifth* counts, was made by a public notary in *Charleston*, and stated, that on the 12th *May*, 1804, he exhibited the original bill to *J. Corrie*, partner of the firm of *A.* and *J. Corrie*, and demanded payment, (the time therein limited for that purpose since its first presentation by him having expired,) and he answered that he could not pay the said bill.

*Israel Foot*, a witness for the plaintiff, proved the hand-writing of the drawers and endorsors ; and he also testified, that he was privy to the drawing and endorsing of the bills, and that the same were endorsed for the accommodation of the drawer, and the endorsors received no benefit by their endorsement ; and that about three months after the bills were drawn, *Hackley*, the

defendant, in a conversation with *L. Loomis* when the plaintiff was not present, on being asked what he intended to do about the bills, replied, that he should take care of them, or that he should see them paid.

The deposition of a notary in *Baltimore*, taken under a commission, the 31st *May*, 1808, was read, which stated the presentment of the bill to *Boughan*, on the 28th *March*, 1804, who refused to accept the bill, for want of funds, and the same was thereupon protested by him (the notary) in due form of law ; that it was usual for him, in all cases of protest, to give notice in writing to the endorsors of protested bills, living at a distance, by putting such notice into the post-office, on the evening of the protest, directed to the party, at his place of residence, and that such notice is to the following purport ; " Mr. *A. B.* please to take notice, that *C. D.'s* bill of exchange, for —— is protested by me, for non-payment, (or for non-acceptance, as the case may be,) and that you, as an endorsor, are held liable for the payment of the same." That in regard to the bill in question, as there was but one endorsement, it is possible that he gave the notice to the holder in *Baltimore*, to be forwarded or communicated in such way as he might think proper ; but although he had no doubt that notice was duly given, he could not, from his recollection, at that distance of time, answer more precisely ; and that looking at the protest for non-payment, shown to him on his examination, he said, that the bill was presented for payment on the 1st *May*, 1804, which was refused, for want of funds, and the same was by him protested for non-payment, on the same day.

The deposition of a notary of *Charleston*, taken under a commission, was also read in evidence, which stated the regular presentment of the bills mentioned in the third, fourth, and *fifth* counts, that the same were *noted* by him for non-acceptance, but not protested ; that the same were regularly presented for payment, and

were duly protested for non-payment; that he did not give notice to the endorsors of the bills of the non-acceptance and non-payment, and of the protest, because the endorsors did not reside within that state.

The judge charged the jury, that there was only one point for their consideration; if they believed that the defendant, *Hackley*, had made the declaration as stated by the witness, *Foot*, knowing that he was legally discharged from all responsibility, they must find a verdict for the plaintiff.

The jury found a verdict for the plaintiff.

A motion was made to set aside the verdict, and for a new trial, and also in arrest of judgment; both of which motions were argued at the same time, but the court being of opinion that there ought to be a new trial, it is unnecessary to take any further notice of the motion in arrest of judgment.

*Colden*, for the defendant. The objection, as to want of a protest of non-acceptance and notice, depends on the fact, whether these are to be considered as *foreign* bills. If they are *foreign* bills, a protest is indispensable, and cannot be supplied by other evidence. It is in vain to look into the *English* books for a similar case; but we may refer to the *English* statutes and books, in order to ascertain what is an inland bill. The statute 9 and 10 *Wm.* III. c. 17. considers bills drawn in one town or place in *England, Wales* or *Berwick*, on any person, in any other place, within the kingdom, as inland bills.* An inland bill is defined to be where both the drawer and drawee reside in the same kingdom;† and a foreign bill is where either the drawer or drawee resides abroad. According to this definition the present bills must be considered as foreign. Judgments in another state are considered as foreign; so bills drawn or payable in other states, and without the jurisdiction of this state, are to be regarded as foreign

* 4. *Bac. Ab.* 637. *Merch.* (M. 2.)

† *Chitty,* 2. 2 *Bl. Comm.* 467. *Cunningham,* 15. *Bayley on Bills,* 14.

bills. Now, in the case of a *foreign* bill, a protest for non-acceptance is indispensably necessary, and cannot be supplied by witnesses in any other way.* In the case of *Orr* v. *Maginnis*,† it was expressly decided by Lord *Ellenborough*, and the court of K. B. that a *protest* for non-acceptance was indispensable, to enable the payee to recover against the drawer; and that the want of it could not be supplied by proof of its having been *noted* for non-acceptance, and afterwards protested for non-payment. This is like the case before the court. There was a *noting* only for non-acceptance, but no protest.

Again, whether, in general, a protest for non-acceptance is requisite or not, the plaintiff, in the present case, has rendered such proof necessary, by setting out a protest in his declaration. He has treated these as foreign bills, and he must prove the protest and notice according to his allegation.

It may, perhaps, be said, that the irregularity arising from want of protest and notice in this case, has been waived by a subsequent promise to pay. But a promise to pay, made without a full knowledge of the *laches*, or its legal effect, does not cure the irregularity, or want of notice.‡ In *Lipscombe* v. *Powell*,§ and in *Piersons* v. *Hooker*,¶ this question was raised, but not decided by the court. In the case of *Fotheringham* v. *Price*,** in *South Carolina*, it was decided, that a promise to pay, made by an endorsor of a bill, under an ignorance of the *laches* of the holder, was not binding.

Again, the alleged promise to pay was made to a third person, *Loomis*, and not the plaintiff. It was not an absolute promise to pay.

*T. A. Emmet*, contra. One circumstance to show that these are inland bills, is, that 20 *per cent.* damages are not recoverable, as is always the case with foreign

ALBANY,
Feb. 1810.

MILLER
v
HACKLEY.

* Chitty,15? 380.
2 Term Rep.717.
6 Mod 8.1 Salk.
131. 5 Term Rep.
239 2 Bl. Com.
471. Chr s.r (es,
2!. 4 Bac. Abr.
724,725. Merch.
M. 7. § 1, 2.
Doug. 635.
† 7 East, 359.

‡ Chitty, 280. 1
Term Rep. 405.
712. Peake's N.
P.202. 4 Dallas,
109.
§ 1 Johns. Rep.
296.
¶ 3 Johns. Rep.
58. 71. But see
Duryee v. Dennison, ante, p.248.
Evans's Essays
on Bills, 120.
** 1 Bay's cp.
291. 1 Selwyn's
N. P. 290.

ALBANY,
Feb. 1810.

MILLER
v.
HACKLEY.

\* *Marius*, 2.

† 2 *Tucker's Blacks.* 467. n. 22.

‡ *Chitty*, 331.

§ 4 *Term Rep.* 170. *Chitty*, 224. See 3 *Bos.* and *Pul.*602. 6 *East*, 8, 9, 10.

¶ 7 *East*, 231.

bills ; nor is there any rate of exchange between the different states.

A bill of exchange, drawn in *England*, upon *Scotland*, is an inland bill.\* There is no exchange between places under the same government, or realm. This was the law before the union between *England* and *Scotland*. Judge *Tucker*, in his notes on *Blackstone*, defines an inland bill to be one drawn in *Virginia*, on any other of the *United States*, and *vice versa*.† If, then, these were inland bills, no protest was necessary.

*Colden.* But whether they are inland or foreign bills, notice of non-acceptance is equally necessary.‡

*Emmet.* I admit, that notice is requisite ; but in the case of an inland bill, it may be given in the morning, after the expiration of the three days of grace.§ The law or usage of the place where the bill is presented is to be regarded ; and it appears that notice was given, according to the established usage in *Baltimore.*

Again, in the case of *Lundie* v. *Robertson*,¶ it was held, that a subsequent promise, by an endorsor, to pay a bill which had been dishonoured, was *prima facie* evidence of its having been duly presented and dishonoured, and that due notice had been given to the endorsor. Lord *Ellenborough* said, that where a man absolutely promised to pay a demand against him, every thing was to be presumed against him ; and that such a promise superseded the necessity of the ordinary proof. The same doctrine was recognised in *Piersons* v. *Hooker*, in this court; though the point was not expressly decided.

Whether the defendant knew of the *laches* or not, was a fact left to the jury. Indeed, after a lapse of three months, such knowledge was to be presumed. It is objected, that the promise was made to *Loomis*, a stranger, and not to the plaintiff ; but *Loomis* may have been

the plaintiff's agent, and such must have been the finding of the jury.

*Colden,* in reply, said, that the amount of damages could not furnish a criterion, by which to determine whether a bill was foreign or inland, as the damages were fluctuating, and depended on the rate of exchange between different places. The 20 *per cent.* damages allowed on foreign bills in this country, is arbitrary, and fixed for the sake of general convenience.

Judge *Tucker* gives no reason for his opinion, nor is any authority cited. It is, therefore, a mere *dictum.*

The conversation between *Hackley* and *Loomis* cannot amount to a promise to pay ; such a promise should be perfectly clear and explicit, so as to leave no doubt. Besides, it was not a promise to the plaintiff, and it does not appear that *Loomis* was his agent. And if there was evidence of a promise, it was made when the defendant was ignorant of the *laches* on the part of the plaintiff, and of his rights, in consequence of such neglect. In the case of *Lundie* v. *Robertson,* the bill was payable so many days after *date,* and so the drawer must have known when he was liable ; in the present case, the bill was payable after sight.

VAN NESS, J. delivered the opinion of the court. By an agreement of counsel, the motion on the part of the defendant, for a new trial, and in arrest of judgment, came on together. This suit is to charge the defendant, as endorsor of a bill, drawn in *New-York,* on *Baltimore,* for 250 dollars, and of two bills drawn in *New-York,* on *Charleston,* the one for 310 dollars, and the other for 315 dollars.

With respect to the first bill, I do not perceive any objection to the right of recovery. The bill, when presented for acceptance, was refused, and due notice

given to the defendant. The evidence to this point con- sisted of the deposition of a notary, who stated that he presented the bill for acceptance, and protested it for non-acceptance. That it was his usual practice, as no- tary, on the evening of the day of the protest, and in all cases of protest, to give notice, in writing, to the endorsors residing at a distance, by putting such notice in the post-office, directed to the party, at his place of residence ; and he had no doubt notice in this case was duly given, though, at that distance of time, he could not recollect positively ; and that it was possible he might have given the notice to the holder to be for- warded.

This evidence was certainly sufficient, in the first in- stance, to support the averment of due notice, and there being nothing to affect it, it will support the ver- dict.

It was objected by the defendant, and urged as a rea- son, in arrest of judgment, that in the counts upon this bill, and in the proof, the demand, and protest for non- payment, were made a day too late, by which neglect the holder made the bill his own, and discharged the endorsor. The answer to this objection is, that the en- dorsor, being fixed by the non-acceptance and notice of it, it is perfectly immaterial whether the demand of pay- ment was or was not a day too late ; because no de- mand was necessary, and so it was held in the case of *Welden* and *Furniss* v. *Buck*. (4 *Johns. Rep.* 144.)

As to the *Charleston* bills, I am of opinion that the plaintiff has not shown enough to entitle him to recover. A protest for non-acceptance need not have been pro- duced ; for I consider a bill of exchange made here, and drawn upon a person within the *United States*, though not in the same state with the drawer, as an inland bill ; and, assuming it to be such, no protest was requisite ; for we have not adopted the statute of 9 and 10 *Wm.* III. requiring a protest on such bills. But the great

defect in the plaintiff's case is the want of notice to the defendant of the non-acceptance of the bills. None was given, or attempted to be given, and he was consequently discharged. A subsequent promise to pay, under a knowledge of the fact of want of notice, would be a waiver of notice ; but I think there was not the requisite evidence of such promise. It ought to have been made out clearly and unequivocally. The defendant only said to a third person, when talking generally of all the bills, (that on *Baltimore* as well as those on *Charleston,*) that *he would take care of the bills, or see them paid.* Whether he used the one phrase or the other, is left in doubt ; and if the first phrase was used, it was altogether uncertain whether he meant to be understood that he would resist, or would pay the bills.

It would be dangerous to fix an endorsor without notice, and perhaps without knowledge of the *laches* of the holder, upon such loose conversation with a third person. No case has ever gone so far. Unless, therefore, the plaintiff will consent to reduce the verdict to the amount of damages on the *Baltimore* bill, there must be a new trial, with costs, to abide the event.

There were some other questions raised as to the counts and the proof relative to the *Charleston* bills ; but the want of notice being a decisive objection to the right of recovery, I need not now take notice of them.

Judgment accordingly.