### WILLIAM HADDUCK *versus* DAVID L. MURRAY.

When the holder and maker of a promissory note live in different towns, in order to render the endorser liable, demand must be made on the maker as soon after the note becomes due as can conveniently be done, considering the situation of the parties and the frequency of communication between their places of residence. The same rule exists as to giving notice to the endorser. When the facts as to the situation, distance, &c., of the parties are agreed on, or are found by the jury, the seasonableness of the demand becomes a question of law.

THIS was an action of assumpsit, brought by the plaintiff as endorsee of a promissory note made by one *Sargent*, and payable to the defendant September 25, 1816, and by the defendant endorsed to the plaintiff.

The cause was tried here at the last term, on the general issue. The plaintiff proved the execution and endorsement of the note : and offered to shew also that on the 1st day

Hadduck
*vs.*
Murray.

of October, 1816, payment was demanded of the maker ; but the note itself was not presented until the third of that month. *Sargent* at both times neglected to pay it, and on the last day notice of his neglect was duly given to the defendant.

The holder and maker resided about fifteen miles apart, in different towns, one in *Salisbury* and the other in *New-Chester*, between which towns there was no direct communication by mail. But the holder and endorser lived near each other, in the same town. When the defendant was notified, he stated his willingness to pay the note, if *Sargent* refused doing it, and remarked further that he would immediately take measures to render the plaintiff secure ; and that thus he, the endorser, would become entitled to a farm, which it appeared had some way been appropriated to the payment of the note.

To the admission of the above testimony the defendant objected, on the ground that it proved neither a seasonable demand and notice, nor a waiver of them, under a full knowledge of all the circumstances. But the court admitted the testimony, saving the question raised, and a verdict was taken for the plaintiff, subject to be set aside or affirmed, as might appear proper on further advisement.

*Noyes*, for the plaintiff.

*E. Webster* and *R. Fletcher*, for the defendant.

WOODBURY, J., delivered the opinion of the court.

It was long disputed in *England* whether the seasonableness of demand and notice was a question of law or of fact (1). After some decisions, apparently contradictory, and after courts had become acquainted with the practice and opinions of intelligent merchants on the subject, it was regarded as an enquiry for the jury no farther than to ascertain the situation of the parties—their distance from each other—the course of the mail, and times of presentment and notice. These once settled, the court undertook to decide whether the holder had or had not exercised due diligence.

(1) 1 D. & E., 167, Tindall *vs.* Brown.

Hadduck
*vs.*
Murray.

*Chitty on Bills* 165, 198.—1 *D. & E.* 167.—2 *do.* 186, *S. C.* —3 *do.* 428.—3 *Bos.&Pul.* 599, 602.—7 *East* 385.—6 *do.* 3.

In some of the *United States* the question is still disputed, and in others has travelled the same course as in *England. Chitty on Bills* 165, 198, *note by Story.*—2 *Caines* 369.—1 *John. Ca.* 1.—5 *John.* 375.—1 *Dal.* 252.—10 *Mass. Rep.* 86.—11 *John.* 188.

It is believed, that until very recently the seasonableness of demand and notice has not been considered, in *New-Hampshire,* as a mere question of law. Indeed, the point is occasionally still started; and the practice is unsettled. A gradual approach to the strictness and promptitude of mercantile men in a state so agricultural as ours, was undoubtedly necessary in order to do substantial justice. Because if we advert to the usage and information existing on this subject, it could not be considered, except some times in sea-ports or among professional men, as the real intention of the parties to the contract, that, after the note became due, demand and notice should be immediate. The question was, therefore, left exclusively to the jury to decide whether, under all the circumstances, the holder exercised such diligence as was naturally to be expected.

But the inconvenient uncertainty which this introduces; the juries in different counties deciding differently on the same facts; and different juries in the same counties equally disagreeing, should now induce courts to adopt uniform rules upon similar testimony, and decide themselves, as is their peculiar province, the legal obligations arising from all instruments produced before them in evidence. This the consistency of legal science requires, and the increased information of society justifies. The construction which, as a general rule, the law puts upon the endorsement of a promissory note, appears to be, that the endorser is not liable to pay it unless the holder, after the note becomes due, demand payment of the maker, and give notice of his neglect to pay, to the endorser, as soon as communication is usually had between the places where the respective parties reside.(2)

(2) Chitty on Bills 124, 163, 200.

All the limitations of this rule apply in principle equally as well to the seasonableness of demand as to that of notice; and the counsel for the defendant were mistaken in their impression as to the authorities being otherwise. (3) Adopting the above general rule, then, though we were to enforce it rigorously, still the length of time after the note becomes due, in which the demand must be made, will be longer or shorter, as the distance between the holder and maker is greater or less; and as the intercourse between the places, though at a like distance, is more or less frequent. 2 *Hen. Bl.* 565.—6 *East* 3.—10 *Mass. Rep.* 86.—11 *John.* 188.

If they reside in the same village or city, the communication between them is presumed to be easy and often. The demand in such case must, therefore, be made on the day the note becomes due, unless sickness, accident, or some other reasonable excuse, justify a delay. *Ch. B.* 200.—8 *Mass. Rep.* 453.—12 *do.* 91.—11 *John.* 232.—6 *East* 3.—2 *John. Cas.* 1.

But if the holder and maker live in different places, then the demand should be made as soon after the day of payment arrives as the holder can with convenience forward the note to an agent or friend, for the purpose of presenting it.

It need not be sent till after due, because till then the holder hath right to expect it will be paid him at his own abode. 7 *Mass. Rep.* 486, *Freeman & al.* vs. *Boynton.* Nor is he "bound *omissis omnibus aliis negotiis* to post off immediately" himself, (4) nor "to send a special messenger," (5) because personal communication between the different places is not in the common course of business. It is sufficient if he forward the note by the next regular mail. 2 *Hen. Bl.* 565, *Mailman* vs. *D'Eugene.* If the holder elect a private conveyance instead of the mail, that must be one as speedy, but need be no more speedy than the mail itself. 6 *East* 3, *Darbishire* vs. *Parker.*—3 *B. & P.* 599, *Haynes* vs. *Birks.*

In the present case, the holder and maker lived fifteen miles distant, in different and not contiguous towns, situated

at a distance from the seaboard, thinly settled, and between which there was no direct communication by mail. It is well known that a circuitous mail between such places in the country would oftener occupy fourteen than seven days. Indeed, information in that manner usually passes quicker between *Washington city* and the towns on the great post roads in *New-Hampshire*, than between the same towns and others in the vicinity, where no direct mail route unites them.

By analogy, then, a demand in this case would seem to be sufficiently soon, if within fourteen days. In *Freeman & al.* vs. *Boynton*,(6) a demand within five or six days after the note became due was said to be seasonable, although the mail passed between the places every three days. The distance there was, to be sure, greater; but we have already shewn the immateriality of that circumstance, if the communication be quicker and more frequent.

(6) 7 Mass. R. 486.

When no mail passes, either directly or circuitously between country towns, the time that would be considered seasonable must depend much upon the nature of the business pursued by the inhabitants, the amount of travel between the two places, and other circumstances affecting their intercourse, as well as upon the mere distance. A notice after eight days to an endorser, resident four miles from *Portland*, in *Cape-Elizabeth*, between which places no mail passed, was deemed unreasonable, considering their nearness, and that persons are constantly passing from one town to the other.(7)

(7) 10 Mass. R. 84, Hussey *vs.* Freeman.

But that is not the present case; and, under all the circumstances, we apprehend that the demand on the eighth day was not so unseasonable as to discharge the endorser, who was immediately notified of that demand. It thus becomes unnecessary to decide on the validity of the first presentment, or the defendant's special promise to pay.

*Judgment on the verdict.*