The opinion of the court was delivered by
Ford, J.
A note .of $2500 was made by Jaques and Freeman to Jacob Shute, and endorsed by Jacob Shute, Richard Jaques, P. Ailing, and Frazee Ayers, to the State Bank of Elizabethtown. Being afterward protested for nonpayment, and an action brought on it by the bank against Frazee Ayers, the last endorser, he set up a defence against it on the three following grounds : that notice of protest was not sent to him in due time; that it was not sent to the nearest post office, and that the note was usurious. A verdict having passed against him at the circuit, he now moves to have it set aside for the foregoing reasons.
The first is, because notice of the protest was not sent to him in due time. It appears that the bank sent the note in .question, and had it protested by a notary in New York, where the makers resided; and the notary transmitted notice of protest, by next mail, to the Bank of Elizabeth,, who transmitted it, by the next mail after they received it, to the endorser. How it is manifest that Mr. Ayers would have received the notice one day earlier, if the notary had sent it to him instead of its being sent to the bank, and by the bank to him. I conceive, however, that the course *159 adopted was by no means an improper one, in as much as a notary is required to give notice of protest only to the *holder. This point is so fully settled in 2 John. Ca. 1; 5 Mass. Rep. 167, and the cases collected in Chitty .on Bills 236, a, as to preclude any reasoning on the subject, the disturbance of which might become prejudicial to commerce. If a notary transmit notice to the endorsers, as early as it could have been received by the mail from the holder, it will certainly be good and valid — but he is not ..obliged to do it: and the notice having been transmitted by him to the bank, and by the bank to the defendant, respectively, in due time, removes all objection to the verdict on this ground.
Tho second reason is, that the letter for Mr. Ayers was not directed to tho nearest post office. It seems to bo agreed on by the parties, that Mr. Ayers resided four miles from the post office at 'Woodbridgc, and live miles from the post office at Ealiway, and that he did not reside in any post town. And an objection was raised against considering a letter by mail, as any notice to him, or persons having residences like him, who were entitled, it was argued, to notice by a -personal service. But I apprehend this would be to make a change in established law, to which the legislative branch of the government is alone competent; and certainly no other wisdom could prescribe the distance beyond a, post office to which notice by letter should extend, or where it should stop, and the distracting method by personal service should commence. The judicial branch must be governed by principles and precedents in the law merchant that are already established. And if principles and precedents have established any rule whatever among merchants, it is certainly one, that if the endorser live in a city or place different from the holder, he may be served with notice by letter, directed to the post office which is nearest •to his placo of residence. See the principle fully stated, -with all the cases .collected upon it, in Chitty on Bills. Con *160 sidering the amount in bills of exchange and negotiable paper resting every day for salvation on this universal principle, it ought not to be shaken or altered without, the most imperious reasons; and yet there are none, in my view, of that description. If persons residing far from a post town,, aside from the common walks of gregarious commerce, will give their names in guarantee of commercial paper, it is-better they should be held to inquire for letters at the nearest post office, about the time such paper conies to maturity,. than that the holder *should be compelled to send a 'special messenger fifty or one hundred and fifty miles to serve personal notice; or that an established system of notices, sufficiently complex already, should be forced to give way to the introduction of novel exceptions, imposing burthensome, expensive and hazardous duties on all men of business, merely out of favor to eccentric residences. The-whole matter is therefore reducible to the simple point,, whether notice was directed, in this case, to the post office-nearest to Mr. Ayers’ residence. The proof of it was-attempted by only one witness, and that was the cashier of the bank, who, instead of being positive (at this distance of time) to which of the two post offices he directed the letter,, could testify only, that it was his custom and practice to-send to the nearest post office. This was circumstantial evidence, for the jury to consider of, and was certainly entitled to considerable weight. In 5 John. 375, the court reposed on wha,t a notary declared to be his uniform practice. It certainly afforded a strong presumption of the fact, and disables me to say, that I am at all discontented with the verdict, in this particular.
The third reason assigned is, that the noté is usurious, It appears that Jaques and Freeman offered a note, by the same makers and endorsers, of $8,000, for discount at the bank, and could not obtain the accommodation until they proposed to accept post notes at forty-five, sixty and ninety days, as cash; but under this agreement, it was discounted *161 at the usual rate of interest, and post notes at forty-five days paid for one-third, at sixty days for another third, and at ninety clays for the remainder. When the discounted note became due, a payment of $2,000 was made, by way of curtailment, and a note of less amount given in lieu of it, by the samo parties. Thus were existing notes often curtailed in part by cash, and new notes given for diminished remainders, until the parties came to owe the bank only $2,500, for which they gave the note in question. Now seven per cent, was the highest premium that could be lawfully taken on the first note of $8,000, and yet the bank connected an agreement with it that gave them interest for one hundred and ninety-five days on one-third of the post notes, which additional benefit rendered that note most grossly usurious, and Jaques and Freeman were under no obligation to pay it, if they had not pleased. In the ease of Matthews $ Griffith, * (Peake's Rep. 200,) a post note, payable only throe days after date, being an additional advantage beyond lawful interest, was holdon to be clearly usurious.
But Jaques and Freeman have voluntarily paid off that corrupt noto, and entered into another agreement or security, whereby the firm ground on which they stood, is given up for another that is essentially different. The question is now, whether any corrupt agreement attended the making of the present note; and as none is pretended, it becomes difficult or impossible to bring a note, that is lawful on the face of it, and had no agreement connected with it, under the words and lash of the statute, which speaks of a note wh&reon or whereby a greater benefit is reserved or taken. The first note came within these words, and was as different as it could well be from the last, in this view of them. So far we can go on principle.
But the corrupt note, is alleged to be the consideration on which the present one is founded, and' that it is tainted with the original infection. In support of this doctrine, the case *162 ■of Tate Welling is relied on, from 3 Term Hep. 637, and it would seem to govern the present, if its authority weie not questionable. But I have two remarks that diminish the validity of this case, in my opinion, exceedingly. One is, that the contract therein, being a lawful one, and no case of usury before the court, their speculations were merely gratuitous, and not considered so carefully as if they had been made on a point in the cause. Another reason, strong in itself, and eminently corroborative of the former, is, that the same court virtually retracted those ideas afterward, when coming over the doctrine of securities substituted for ■prior ones, wherein they recognize the difficulty of bringing these new securities within the words of the statute; and add, that if by ascending indefinitely through a line of connected mortgages, to a remote one that had a speck of usury in it, that speck might be derived down to a present one, it might endanger half the titles by mortgage, in the nation. And it is a fact, that the speculations of the court in Tate § Welling were retracted virtually afterward, and are contradicted by all subsequent cases. Thus in Barnes v. Headly, (2 Taunt. 184) Webb, on lending out £900 on lawful interest, reserved moreover to himself certain large commissions; but, on being threatened with a prosecution for usury, he surrendered his usurious agreement *and securities, and took, in lieu thereof, a new security for only the £900, with lawful interest. It was argued, that the consideration of this new bond was contained in the former corrupt agreement, and formed a material part and parcel of it. But the court adjudged the first and last contract to •be materally different; that the first was usurious, corrupt, and void, under the statute, but the last had in it nothing to which the words of the statute could apply. So in the case of Wright v. Wheeler, (1 Camp. 166) Wright, on lending £1,000, took a bond on interest, and also a promise of £50 a year, as salary for a clerkship, in which he was not expected to officiate'; but growing alarmed after he had *163 received the salary for one year, he refunded it, and gave ■up his old securities, and received, in lieu of them, a bond for the exact money he had lent-; and the court decided that this last bond had nothing in it to which the words of the statute could apply. The case of Cuthbert v. Haley, (8 Term Rep. 390) is stronger still. Guthbert took an assignment of .a note that had been (without his privity) usuriously made by one Haley, and Haley might therefore have avoided it, if ho pleased, yet he voluntarily gave Guthbert a bond for the same money, which bond had not been agreed upon when the usurious note was made, nor was it a device, shift, or contrivance that had been agreed on in order to evade the statute; and the court held, that a new security was always valid if it had not been agreed on before hand, as a device to evade the statute. The ablest of our American tribunals have coincided with these decisions and reasons. In the case of Bearce v. Barstow, (9 Mass. Rep. 48) one Byram gave a note to Bearee of $100, on which he agreed to pay 24 per cent, interest; and when, at the end of the year, it .amounted to $496, Byram got one Barstow, who owed him money, to take it up lor him. This Barstow did, by giving his own note for the amount. The jury found that this substitution had not been agreed on when the money was lent, as any device, shift, or contrivance to evade the statute; and thereupon the court decided, that the last note was not one whereon or whereby usurious interest was reserved, and therefore, that the words of the statute could not apply to it; that the statute was a full bar of the first note, if it had pleased the party to embrace it; but if he choose to waive the remedy provided by law, and suffer judgment to pass by default, or substitute a new' security *for the amount, they cannot be afterward avoided. The same doctrine was recognized and affirmed by the court afterward, in 10 Mass. Rep. 121. The authority of these ■cases rests on the reasoning in them, from which there is no escape. Our statute provides, that a note on which higher *164 interest is reserved or taken, &c., shall be void; but this is a note on which, or on any agreement attending it, no higher interest than seven per cent, was reserved, and the statute cannot apply to it. And as there is no ground for the third objection, any more than for the first and second,
Let the rule to shew cause be discharged.