The opinion of the Court isas delivered hy

Mr. Justice ■ 'Qantt.

No principle in the law is more clear or better settled, than that the endorsee of a note of hand, after demand of payment of the maker, who refuses or omits to pay the same, must, within a reasonable time, give notice of such refusal or neglect, otherwise the endorser will be discharged. I will not multiply authorities in support of a position which is so familiar with the profession; but advert to one case only, by way of illustration and analogy: I allude to the case of Anderson, vs. George, (a) tried before Lord Mansfield, chief justice. The ac-» tion was against the defendant, as endorser of die note. George, the payee of the note, had endorsed it in payment to the plaintiff: it became due 2d May, and on the 5th May, the plaintiff’s banker (after three days grace) demanded it of Hopley, the maker. Hopley desired t\£o gr three days to pay it in, and so from time to time, which >vere given him till 13th May, when lie told the banker he could not pay it. On the 14th, Hopley failed, and became a bankrupt. On plaintiff’s applying to George for payment, George told liim he should have applied before, on Hopley’s first refusal, and that he now did not think himself liable to pay it: whereupon the action was brought. Lord Mansfield — !! The question is, who is to bear the loss, as Hopley, the drawer has failed. The banker, wbo has. the note in his hands, and who in this case, being the plaintiff’s agent, is to be considered as one and the same person with the plaintiff, comes on the 5th, and'demands payment: the banker gives Hopley indulgence to pay it from the 5th to the 13th, without giving any notice to tbe endorser; which if he had done, it would have urged the endorser to get Ms money, lierq is no neglect of application. The case is still stronger; here js an actual credit given for eight days, and the question ig *14 who gaye the credit. The loss (though this is a hard case) ought to be borne by the person who gave the credit.*’ Verdict was given for the defendant.
Apply the circumstances of the case quoted, to the one before us. Houston, the agent of the plaintiff, on the 10th December, 1819, presented the note to the drawer for payment; the note was not paid,. but Conner said, that he had at home unsold cotton, which on his return he would apply to the payment of the note, in the hands of. any one the agent might appoint. On this promise made by Conner, the agent placed the note in the hands of Thadeus G. Holt, and at the same time informed Holt of what Conner had promised. From that time till March, 1820, a period of three months and upwards, no notice is given to Frazier.
That the agent relied upon the assurance of payment given, by Conner, is evident, from the information which he gave to Holt, at the time the note was placed in his hands. His meaning fairly interpreted, is this, “ I have demanded of Mr. Conner, payment of this note in Milledgeville, where he is attending as a member of the legislature. He was not then in a situation to pay it, but he has requested indulgence until his return home, where he has on hand a parcel of cotton. He has given me an assurance that he will pay the proceeds of the sale of this cotton into the hands of any person whom I rnay appoint, in discharge of the note; take his note therefore and collect in my behalf, the amount called for. by it on Conner’s return home, and sale of the cotton.” I think no other correct interpretation can he. given to this evidence; and it shews most evidently that the agent of the plaintiff did rely on Conner’s promise; that he did indulge and trust him for the fulfilment of it, from the 10th Dee. 1819,. (the time when the demand of payment was made) up to the 10th February, 1820, when a suit was instituted against Conner, npon 'the note. The principle therefore, upon which the case of Anderson and George seems to have been settled, that when the holder gives a credit to the maker, the endorser is discharged, will apply with redoubled force in die present case, where the credit given by the holder to the maker, was extended to a period of time far beyond what was allowed in that case. Independently however, of the defendant’s exonera- *15 lion from liability, by reason of the credit given by the agent, it is equally clear that the degree of diligence which the law contemplates, in respect to notice of non-payment to the endorser, where he is intended to be made liable, has not been fulfilled on the part of the present plaintiff.
From the evidence disclosed by the trial, it was understood by the contracting parties that there would be a delay in the demand of payment, for the space which intervened between the time of malting the endorsement and the demand which was made; but the evidence discloses nothing which can be interpreted into an agreement on the part of Frazier, that he would dispense with notice of non-payment. The reason of the rule which requires this notice is obvious, that the person intended to be charged by the default made, may look after his interest and not have it compromitted by any neglect of the holder, whose business and duty it is to give the earliest notice of the. default. Insolvency itself, in the maker, will not supercede the necessity of notice of non-payment. It constitutes the condition, -sine qua non of recovery against the endorser; for in an action of this nature, it fs legally necessary that notice of default or refusal to pay, should be alleged to have been given to the endorser, in reasonable time, and must be proved on the trial. Where notice might have been given in four days and less, .a delay of three months and upwards, is such laches on the part of the holder, as would clearly fix him with the loss; unless indeed, the endorser has waived the necessity of notice: which brings me to that part of the evidence relied upon by the plaintiff, and noticed in the charge of the presiding Judge, to the Jury.
Houston, the witness, testified that when he gave notice to Frazier, in March, 1820, of the demand and failure to pay, and that he had directed a suit to be brought, &c. Frazier replied, that it was right, and that he would see that his property, (meaning, I suppose, Conner’s, die maker,) brought the money.
In what light are we to view these expressions, on the part of Frazier? If they can be fairly construed into a promise to pay the note, or a guarantee that the note should be paid after a disclosure having been made by the agent of all that had taken place; or if indeed, this evidence, per se, is sufficient to shew *16 that, at the time the note was endorsed, ’ it ivas understood that Frazier was to dispense with the legal requisite of reasonable notice of non-payment, as well as that of demand on the maker* which last he certainly waived at the time of the endorsement, then his responsibility would be fixed, and the verdict of the jury correct.
I cannot, however, consistently with any correct rule of. construction, put so enlarged an interpretation upon these expressions. Another and far different one may be given to them, which I will explain thus: “ you, as agent of the plaintiff, after relying upon a promise of payment, on the part of the maker, and after having given credit to, and indulged him for such a length of time as exonerates me from liability, have done right to bring suit upon the note against the maker, v.ho is alone legally bound to pay the amount: I will however, aid you with my endeavors, that his property shall bring the money.” That these expressions on the part of Frazier, were no waiver of a right to notice of non payment, will be clearly seen by reference to the authorities quoted in. Chitty on Bills, 308-523. Chitty himself says, the waiver by an endorser, must he explicit and made out by the most'clear and unequivocal evidence. If an endorser, speaking of several bills, on different places, and under different circumstances, says, “ he would take care of them,” or “ he would see them paid,” this was held not sufficient evidence of a promise to pay one of the bills, on which no notice of non-acceptance had been given. Miller vs. Hackley, 5 John. Rep. 375. Griffin vs. Goff, 12 John. Rep. 423. Expressions of this kind are to be construed strictly, May vs. Coffin, 4 Mass. Rep. 341. In the last case, where there liad been promise to pay, where due notice had not been given, it was held not binding, as being wholly without consideration, and especially, as he had retracted his promise a few days afterwards. So too, if an endorser, under ignorance of the law, or through mistake of the law, promise to pay a dishonored bill or note, he is not bound by such promise. 7 Mass. Rep. 449. In the expressions used by'Frazier, there certainly was nothing like an express promise to pay, without which, it seems he could not legally be held liable. In the case before us, the note having been endorsed after ‘it became duet Frazier’s relationship with the drawer, Ms waiver *17 •of diligence, in respect to demand of payment; his after declaration that Houston had done right in bringing the suit, aiid hiá saying that he would see that Conner’s property' should bring the money. All thesé considerations, combined with the certainty that Frazier had received value for the note, together with the apparent injustice of applying a rigid technical rule to contracts not strictly of a mercantile character, may probably have produced this verdict. It is possible however, there may have been representations on the part of Frazier, in relation to this transaction, which may on a second trial produce the same result, of filling him with the payment of this debt. But from the best view which I have been able to take of the evidence furnished on the trial, and from the law arising thereon, I entertain no doubt but that a new trial should be granted; which is the unanimous opinion of the court.

 Selwyn’s N. Pri. 404.