CARR, J.
As to the instructions given by the circuit court to the jury, which were excepted to by the appellant, and of which he complains, there has been much difference of opinion among the members of this court as to the meaning of them; and, without discussing the grounds of this difference, or stating the intrepretation to which I incline, I concur with my brethren, that instructions which have so perplexed and divided us, must be too ambiguously and imperfectly expressed to be submitted to a jury. For this defect, the judgment must be reversed, and the cause sent back for a new trial. And here, I think, we might very well stop. But my brethren think we ought to give an opinion on the point, which the circuit court decided for the appellant, as to the necessity of protest of the bill lor non-acceptance, and due notice of such dishonor to the drawer. The doubt with me was, whether this question was regularly before us, since the verdict was in favour of Cumming, against whom this instruction was given, and the appeal taken by Thompson, in whose favour it was given. I will, however, as briefly as possible give my impression on the subject.
It is doubtful, whether the court meant to say, that protest and notice of non-acceptance of a foreign bill of exchange, are in no case necessary to be proved in an* action against the indorser, or not necessary in this action, under the particular pleadings. It was discussed at the bar, upon the hypothesis, that the court meant to declare the general law on the subject, and several cases were cited in support of *the opinion. The cases were Stott & Donaldson v. Alexander & Co. in this court, Brown v. Barry, and Clarke v. Russell, in the supreme court of the United Slates, and some others which I shall not notice. The first of those cases this court decided expressly under the act of 1748, which declares, that ! ‘no person shall pay more than 18 months interest from the date of any bill, to the time it shall be presented protested, to the drawer or indorser.” The court said, that the legislature, contemplating the circumstances of the parties, and the countries between which the exchange was to be made, “seemed to have thought eighteen months a reasonable time for the negotiation, and for the giving of notice, by allowing full damages if the notice be given within that time.” This the court considered, under that law, a general rule, to be departed from only’ when particular circumstances rendered it reasonable and proper. We know that the circumstances, the relations and the facilities of intercourse between us and England, are wholly changed since the statute of 1748; and this no doubt was the reason that, in the revisal 1792, this clause of the statute of 1748, on which this court decided, was omitted, and the subject left to stand upon the general law merchant. The case of Brown v. Barry originated in *346 the circuit for the district of Virginia, and was carried by writ of error to the supreme federal court. It was an action of debt on a bill of exchange, brought on the statute of 1748. That it was brought on that act, and decided under it, is evident from one of the grounds assigned in the circuit court, in arrest of judgment, viz. that the action was founded on a statute not in force, when the bill was drawn. Chief justice Ells-worth, in considering this point, states, that the bill was drawn in February 1793, that an act passed at the session of 1792, repealing the act of 1748, but that at the same session, another act passed suspending the repealing act till October 1793; and, as these two acts being of the same session, must be supposed to speak at the same time, they only amount to this, that the act of 1748 should stand repealed *from October 1793. Another exception to the declaration, taken in arrest of judgment, was, “that there was no averment of a protest for non-acceptance of the bills.” To this the chief justice answered, 1. “that it does not appear, that the bill was not accepted, so that there could have been such protest;” and this certainly seems to be a satisfactory answer to the exception; but, not contented with that, he added 2. 1 ‘as to bills drawn in the United States and- payable in Europe, of which this is one, the custom of merchants in this country, does not ordinarily require, to recover on a protest for non-payment, that a protest for non-acceptance should be produced, though the bills were not accepted.” This remark seems to have been thrown out carelessly, and is very loosely and indefinitely expressed. We have no authority cited, no case referred to, no ground stated, on which the assertion rests. Whence did the chief justice derive the information he gives us, as to the custom of merchants? And what did he mean by the custom of merchants in this country? Did he mean the United States? I apprehend there is no custom of merchants of the United States. The law merchant is a part of the common law; and, like that, must prevail in each state, just so far, and with such modifications, as each state has established. By this country, did the chief justice mean the place where he delivered the opinion, Philadelphia? If so, their custom of merchants does not bind us. And if he meant Virginia, whence the cause he was deciding came, he spoke of a custom influenced by our statute of 1748, which, we have seen, was changed, with the change of times and habits, in 1792. Thus, I think, there is nothing binding us to this exploded state of things; but we are free to follow, the rule of the law merchant, as long settled in England, and in most of the states of the Union. That the rule, as thus settled, requires protest and notice of non-acceptance, I will not cite cases from the english books to shew: they are every where to be found. In New York, see Miller v. Hackley, *5 John. Rep. 375, in Massachusetts; May v. Coffin, 4 Mass. Rep. 341; Maryland, Philips v. M’Curdy, 1 Harr. & John. 187; North Carolina, 1 Hawk. Rep. 195; South Carolina, 1 Bay’s Rep. 177; 1 Rep. Const. court 100; Kentucky, 2 Marsh. 264. These are a few of the states, to whose reports I have had an opportunity of referring. I doubt not, there are many others. The rule too, is in itself most just and reasonable. In commercial affairs, every thing depends on punctuality and dispatch. A drawer or in-dorser may have thousands in his power today, by which he could save himself, with notice, but which to-morrow, may pass from his hands. Another consideration is, that it is due to our merchants, to place them on equal ground with the rest of the mercantile world.
But if the court below meant to say, that though protest and notice of non-acceptance, be generally necessary to be proved, yet it was not necessary here, because there was no such averment in the declaration, and you cannot hold a party to prove what you have not held him to aver; then (as some of my brethren think) it would give rise to an important question under our statute of jeofails. I do not think myself, that such a question can arise: but, however that may be, we waive it at present, as not being necessary to the decision of this case.
GREEN, J.
After pointing out the ambiguities of the exception taken by the appellant, Thompson, to the instruction of the circuit court, and shewing the difficulty and impossibilitj' of collecting the import and bearing of the opinion complained of, with sufficient certainty to enable this court to judge of its merits, and concurring with Carr, J., that the judgment should for that reason be reversed, and the cause remanded for a new trial, proceeded to consider the point which the circuit court decided against the appellee, Cumming, viz. that notice to Cumming of the non-acceptance of the bill, was not necessary to sustain the action, though notice of the protest for non-payment was.
*He said: The declaration stating the refusal of the drawees to accept the bill, does not jver, that it was protested for non-acceptance, or that notice thereof was given to the defendant. It does not appear, whether the instruction on this point proceeded upon the abstract principle of law, as to the necessity of a notice of non-acceptance in general, to entitle the holder of a bill which was not accepted to recover, or upon the opinion .that it was unnecessary to prove such notice in this case, because the fact was not alleged in the declaration.
If the instruction proceeded upon the first ground, it was in conformity with the decision of this court in Stott & Donaldson v. Alexander & Co. of the supreme court of the U. States in Brown v. Barry (a case arising under the laws of Virginia) of the same court in Clarke v. Russell (a case arising under the laws of Rhode Island) and of the supreme court of Pennsylvania in the case of Read v. Adams; but contrary to the settled doctrine in England, New York, Massachusetts and Maryland, which requires not only a notice of, but also a protest for, non-acceptance. It is to be remembered, that the two cases occurring under the laws of Virginia, above mentioned, arose under our act of 1748, which limited *347 the recovery of interest on a protested foreign bill, to eighteen months from the date of the bill until it should be presented protested to the drawer or indorser thereof. This was construed by this court as giving a general, though not inflexible rule, that notice of the protest .of a bill was sufficient, if given within eighteen months of the date; and, consequently, if notice of a protest for non-payment was given within that time, a case could not arise where notice of non-acceptance within the same time could be of any value. This provision of the act of 1748, was dropped and repealed at the revisal of 1792; and the rule of the law merchant as to protest and notice, both in cases of non-acceptance and non-payment, left to operate uninfluenced by anj' statutory provision. I think we are at liberty and ought to adopt the settled rule prevailing in England, *and in the most commercial states of the Union, not only in justice to our merchants, and to put them on the same footing with others, but because every reason which leads to the requisition of a protest and notice of nonpayment, applies with equal force to the case of non-acceptance; the great object, in both cases, being to enable the parties responsible, to guard, by timely measures, against the consequences of the dishonor of the bill.
If the circuit court proceeded upon the ground, that, although, in the abstract, notice of the non-acceptance of a foreign bill was necessary to entitle the plaintiff to recover, yet that no proof of such notice was necessary, or could be required, to enable the plaintiff to recover in this action, as he had not averred it in his declaration ; it brings into view an important question, as to the effect of the provision of our late statute of jeofails (which prohibits the arrest of judgment in any case after verdict, for any defect in the pleadings, which might have been taken advantage of by demurrer, and was not) in respect to the proofs necessary to be given, to support the action or defence at the trial. As this question may not again occur in this case, I think it is better to pass it by for farther consideration in a full court, whenever a case shall occur in which it may be necessary to decide it.
COAETEK and CABEEL, J., concurred.