### MARTIN *v.* SMITH.

1. Justices of the Peace—Certiorari.

   A justice's judgment will not be reversed on *certiorari* because of the admission of testimony which was not the best evidence of the facts sought to be proved, where no objection was made to the reception of such testimony upon the trial.

2. Bills and Notes—Presentment—Custom of Bankers.

   A promissory note payable at the I. bank was left with the C. bank for demand and protest. In an action upon the note, the testimony tended to show that it was the custom among the banks of the city to send messengers once a day to one of the banks for the purpose of adjusting their accounts; that it was the duty of each messenger, on receiving claims against the bank represented by him, to take the same to such bank, to be passed on by the cashier; that, on the day the note in suit matured, it was delivered to the messenger of the I. bank. It further appeared from the clearance books of both banks that, on the day in question, there was a balance of a certain amount in favor of the C. bank, but that an item corresponding with the amount of the note in suit was rejected by the I. bank, and the account adjusted by the giving of a check to the C. bank for the difference between the two amounts. A certificate of protest was made on the same day by the cashier of the C. bank, as notary public. *Held*, that the evidence was sufficient to warrant a finding of due presentment, demand, and refusal of payment of the note.

3. SAME—NOTICE OF DISHONOR—EVIDENCE.

 Evidence of a notary who had made a certificate of pro-
test of a promissory note, that, while he does not recollect
mailing notice of dishonor to the indorser, he has no doubt,
from the fact that it was his habit to mail such notice upon
protesting a note, that he did so upon the occasion in ques-
tion, as recited in his certificate, is competent as tending to
show notice of dishonor.

Error to Ingham; Person, J. Submitted January 8,
1896. Decided February 7, 1896.

*Assumpsit* by George B. Martin against Robert Smith,
impleaded with M. D. Skinner, on a promissory note.
From a judgment for plaintiff, defendant brings error.
Affirmed.

*Jason E. Nichols,* for appellant.

*Charles F. Hammond,* for appellee.

HOOKER, J.  Martin, being the owner of a promissory
note given by M. D. Skinner to Robert Smith, and by
him transferred to Martin by indorsement, left the same
with the City National Bank of Lansing for demand and
protest.  The note was payable at the Ingham County
Savings Bank of Lansing.  This is an action brought by
Martin upon this note.  He recovered in justice's court,
and at the circuit upon *certiorari.*  It is now brought to
this court by writ of error, by Smith, the indorser.  The
errors alleged are:  *First,* that a proper and legal de-
mand was not shown; *second,* that the testimony did not
support the judgment.

 Plaintiff sought to prove demand and protest, by the
certificate, in the usual form, of a notary.  Plaintiff also
introduced the following testimony:

 Fred J. Hopkins:  "I am the assistant cashier of the
City National Bank of Lansing, Michigan, and was such
cashier on September 26, 1894, and am the notary public
who protested the note introduced in evidence.  I signed
this certificate attached to the note as such notary public.

I did not go in person to the Ingham County Savings Bank on the 26th day of September, 1894, or at any other time, to demand payment upon this note, and never demanded payment of M. D. Skinner. The note in question was left at our bank on or prior to September 26, 1894, for protest, and I protested it in the usual and customary manner of protesting paper at our bank and in the other banks in this city, as I understood it, which was as follows: On September 26, 1894, and for some time prior thereto, the several banks in the city of Lansing had, by an agreement among themselves, established what might be called a custom of meeting once a day, at 1:30 p. m., at one of the banks, for the purpose of adjusting the accounts between such banks, or what might be styled a clearance. This was done by the various banks' making up a list of accounts against the other banks in a clearance book, and bundling the checks, drafts, and claims against the other banks severally, and sending some employé of the bank to the place of meeting that week for the purpose of adjusting such accounts. This was never done by the cashiers of the banks, but by some of the employés. The week in September in which the 26th day occurred, the meeting was at our bank. The agent from the Ingham County Savings Bank came to ours, or the City National Bank, and there was delivered to him, among other checks and accounts against the Ingham County Savings Bank, the note in question It was a further custom, by agreement among the said banks, that at the meeting of the agents of said banks at 1:30 p. m., as aforesaid, the checks, accounts, and notes against each bank, with a list of the same on the clearing book, was taken back to the bank, to be passed on by the cashier of such bank, and the same being honored and allowed, or dishonored and rejected, by said cashier. Our clearance book and the books of the bank show that on September 26, 1894, there was a balance due to our bank from the Ingham County Savings Bank of the sum of $510.09. This is also shown by the clearance book in the Ingham County Savings Bank. Both books show that the item of $100, which I believe this note represented, was rejected by the Ingham County Savings Bank, and we were given a draft on New York for $410.09 by that bank to adjust the accounts of that day. I do not know, of my own knowledge, other than what I gather from our clearance book and the clearance book of the Ingham

County Savings Bank, that any demand was made at the Ingham County Savings Bank for payment ¡upon this note. I mailed a notice of protest in this case on that day, addressed to Robert Smith, Lansing, Michigan. I do not remember of mailing it, but testify from my habit of mailing letters notifying indorsers when I make a protest on a note, as I did in this case."

Adelbert Baker, a witness produced and sworn on the part of the plaintiff, testified as follows:

"I am assistant cashier of the Ingham County Savings Bank. I have no remembrance of any demand being made at our bank on September 26, 1894, for payment on the note in question. The clearance book of the Ingham County Savings Bank on September 26, 1894, shows that there was an item on the said date of $100 that was rejected. Whether this was the note in question I am unable to say. I have no remembrance of seeing the note in question, and have no knowledge concerning it, whatever, other than I stated."

There is evidence tending to show that the note was seasonably sent by the City National Bank to the Ingham County Savings Bank, for presentation and demand, through the messenger of the latter bank; that the officers of the latter bank received it, and recognized the demand, and refused to pay. If the note actually reached the Ingham County Savings Bank, during banking hours of the proper day, under circumstances which both banks understood to be intended as presentation and demand of payment, and such understanding was acted upon by the Ingham County Savings Bank by returning the paper rejected, there was a compliance with the law. *Nichols* v. *Goldsmith*, 7 Wend. 160.

It is contended that no witness testified that the note was taken to the bank, or received there; but, while it is true that there is no direct evidence of those particular facts, there is proof of circumstances which tend strongly to prove them, as well as the understanding of both that this was a presentation and demand of payment, and refusal.

Both of the bank officers testify that their testimony

rests upon what the books of their respective banks show as to demand at the Ingham County Savings Bank, or, in other words, that they do not testify to the facts from recollection, but from what the books show; and it is said that this was insufficient evidence to establish the fact that the note was taken to the Ingham County Savings Bank, inasmuch as it rested entirely on the statements of others. But the evidence does not appear to have been objected to, and we have held that a case should not be reversed because the testimony admitted by the justice was not the best evidence, where it was not objected to on the trial. See *Hart* v. *Tp. of Port Huron*, 46 Mich. 428; *Forbes Lithograph Manfg. Co.* v. *Winter*, 107 Mich. 116.

It is further objected that the record does not show that notice of dishonor was given. In our opinion, the effect of the testimony of Mr. Hopkins is that he does not remember of mailing the notice, and that he testified that he did so from his *memoranda* and his habit of mailing notices when, as in this case, he made certificate of protest. It was equivalent to saying that, from the certificate of protest made by him, which recites the fact, he had no doubt that he mailed the notice as therein stated. This was evidence tending to show notice. 2 Phil. Ev. p. 549 (Cowen and Hill's Notes); *Miller* v. *Hackley*, 5 Johns. 375 (4 Am. Dec. 372); *Bank of Monroe* v. *Culver*, 2 Hill, 531; *Fisher* v. *Kyle*, 27 Mich. 454. But the certificate of protest was presumptive evidence of presentment, demand, and notice of dishonor, under the statute (1 How. Stat. § 632), if, as the certificate states, it was under the notary's seal of office. We think that there was evidence to support the judgment.

The judgment of the circuit court must therefore be affirmed.

The other Justices concurred.