The opinion of the court was delivered by
Duncan, J.
The foundation of this action was a sealed instrument, in the words following: “We promise to pay to the order of Peter Beaver and Co., two years after date, six hundred and sixty-one dollars and thirty cents, without defalcation, for value received. October 1st, 1816.
(Indorsed) “ P. Beaver and Co.”
The declaration or statement filed contained several counts: the first states the indorsement to contain an assumption to pay the contents, if Beaver did not pay. The second states money had and received for the use of the plaintiffs. The third, money lent.
There was no evidence given of any antecedent debt due by the defendants to the plaintiffs; so that the case rested on the effect of the indorsement, and on the communication by letter to the plaintiffs’ counsel from the defendants, of the 26th of May, 1820, which appears to have been the first notice received by them of the bill not being paid, and the evidence of the plaintiffs’ counsel of a conversation between him and the defendants.
*314 This blank indorsement was not filled up in any manner before the trial. It is contended by the plaintiffs in error, that it enabled them to fill it up with any engagement they pleased, binding the defendants to secure the payment of this debt, and that, ipso facto, the defendants became bound to pay the debt, (if the obligor did not pay it,) by force of the indorsement; that is, that proprio vi-gore, the indorsement amounted to a guaranty of the debt. This obligation cannot be considered in the light of negotiable paper, or in any point of view as mercantile paper. It appears highly probable, that the parties intended it as such, by inserting the words, “for value received, without defalcation.” But it is a sealed instrument, — an instrument only assignable by virtue of the act of assembly, and that in a prescribed form, under seal, and in the presence of two witnesses, to enable the assignee to sue in his own name. If transferred, as the beneficial interest may be, by simple indorsement, still the action must be brought in the name of the original obligee, for the use of the assignee. The equitable right and the beneficial interest is in the assignee, but he has no right of action in his own name. In the famous case of Gibson v. Minet, 1 H. Bl. 605, Chief Justice Evke, in treating of the right of an indorsee, says, “The derivative title is a title by assignment, which the common law does not acknowledge, but which exists only by the custom of merchants. As it is by force of the custom of merchants that a bill of exchange is assignable at all, of necessity the custom must direct how it shall be assigned. And, in respect of hills payable to order, the custom has directed that the assignment should be by a writing on the bill, called an indorsement appointing the contents of that bill to be paid to some third person, and, in respect to bills drawn payable to bearer, that the assignment should be constituted by delivery only.”
The argument drawn from the assumed similitude or identity of bonds with bills of exchange, and the effect of the blank indorsement does not hold; for they are neither the same thing in reality or áimilitude, except that they are both writings to secure the payment of money. Strike out the seal here, and consider the instrument as a negotiable promissory note, what would the signature of the payee enable the holder to do? The indorsement in blank for a long time was held not to transfer the property and interest in the bill without some further act; but it is now, however, considered that it is sufficient to transfer the right of- action to any bona fide holder; and until it is converted into a special indorsement, by inserting above it the words, “pay the contents to A. B.,” is transferrable by the indorsee, and every subsequent holder, by mere delivery, Chitty on Bills, (Phil. Ed.) 173, 174, 175. What, then, is the power of the holder where a bill is indorsed in blank? A. power is given to him, either to assign over by delivery only, or of specially appointing the payment to be made to a particular individual. And what he does in the exer *315 cise of this power is only expressio eorum guse tacite insunt. 1 Campb. 422. 1 Rose, 20.
This is the extent of the power of the holder; he can convert the blank to no other purpose; he can only fill up the blank to make it a full indorsement. An indorsement which mentions the name of the person in whose favour it is made, is called an indorsement in full; and an indorsement which does not, is called an indorsement in blank. Chitty, 170. There is no difference between a note indorsed in blank and one payable to bearer; so that if this was a negotiable note, then the blank indorsement was only an order to pay the bearer. But the counsel for the plaintiffs argued, (and this seems to be their great reliance,) that a blank indorsement on an instrument not negotiable, gives a greater power to the holder than if it was negotiable. This would seem contrary to the general policy of the law, which certainly never gives to a paper not negotiable a greater currency than to that which is negotiable.
The case relied on, Josselyne v. Ames, 3 Mass. Rep. 274, by no means supports the extravagant position, that in such indorsement the holder may write over it what he pleases. The evidence in that case was, that John Ames being indebted to the plaintiff upon a promissory note of an anterior date, the plaintiff demanded security. John offered his brother Oliver, the defendant, as security, which the plaintiff agreed to accept. The present note was accordingly made by John to Oliver, (but not to his order,) who indorsed it in blank. The plaintiff received it, and delivered up the former note to be cancelled.
There it was said by the court, that the plaintiff, according to the facts reported, might insert over the defendant’s name, “ For value received I undertake to pay the money within mentioned to jE. J.” Not that the holder might do so in any case, but that, according to the facts reported, that is, according to the agreement of the parties, he might do so in that case. The court considered the special agreement of the parties authorized the plaintiff to do this. 'Without at all acknowledging the correctness of this decision, it was widely different from the present. Here there was no evidence of an antecedent debt; no promise to secure the payment: nothing but the naked indorsement. Neither does the case of Russel v. Langstaffe, 1 Doug. 514, touch the position; for that only proves, that an indorsement written on a blank note or check, will afterwards bind the indorser for any sum and time of payment, which the person to whom he intrusts the note chooses to insert in it. There Lord Mansfield said, what no one will deny, “ that the indorsement on a blank note is a letter of credit for an indefinite sum.” And if . there is any case to be found which goes the length of saying, that picking up a blank piece of paper with a man’s name on it, will enable any body to fill it up with any promise he pleases, without any thing passing *316 between the parties on the subject, I would confess my wonder and my ignorance. I am a stranger to such a decision, and am satisfied there is no principle to authorize so fraudulent an act. If this then was a negotiable paper, the opinion of the court was right in instructing the jury, that the holder must demand of the drawer and give notice, in a reasonable time, to the indorser of the nonpayment. In this case, nearly twenty months after the bill became payable, was notice given to the indorser of the non-payment, nor was there any other evidence of a demand of the drawer, than a suit brought to April, 1820, against the obligor.
The effect of a blank indorsement on a bill of exchange does nothing more than transfer the interest in the bill to every indorsee in succession, discharged from every obligation which might subsist between the original parties, Wilkinson v. Nicklin, 2 Dall. 396; and, as between indorser and indorsee, cannot in justice or in reason bind the indorser to any other purpose, or to any extent greater than a full indorsement.
The principal exception to the charge of the court, is the answer to' the request of the plaintiffs in error, to instruct the jury that the blank indorsement by Peter Beaver and Co. on the note given in evidence, makes the partners in that firm answerable and at once liable to the indorsee.
The answer to this was, that “ the bare indorsement of a note under seal does not, of itself, raise a promise to support the action.” I understand this to be a direct negative of the defendants’ proposition, and to state in such a way as that the most common understanding could not mistake it, that the blank indorsement of a sealed instrument does not, of itself, make the indorser at once liable to the indorsee. If there was error in this, then the judgment must be reversed: it is a narrow proposition.
To reason by analogy to simple indorsements, on negotiable instruments, the naked signature could not be carried further than the simple assignment of a bond, without any special covenant. The extent of this was definitively settled in Cummings Assignee v. Lynn, 1 Dall. 444. It was not an obiter dictum, but a solemn adjudication, on a most elaborate argument by the most eminent counsel of that day, “ that the covenant implied by the word assign extends only to this, — that the assignee should receive the money from the obligor to his own use; and if the obligee should receive it, then he would be answerable over for it.”
The assignor has not received: the assignee has an action now depending against the obligor. This has been the acknowledged law ever since, and never I believe called in question before; and, if it were res integra, I, for my own own part, would give no further effect to the word assigned. If the parties choose to go further, let them provide for it by special covenants.
Something has been said about the understanding of the country. We know of no such understanding. It may or may not be so *317 in some parts of the country, but it is far from being the universal understanding. But where the law has been solemnly settled, the common understanding cannot reverse the decision: and if it is thought convenient to change the law, the legislature alone can do this. I do not consider this as a solitary decision, but a decision always acknowledged and recognized in courts of justice, and consistent with the legal construction of the word assigned in other instruments, which does not import a covenant of warranty. The case of Graham v. Goudy, Add. 55, shows that the construction in Cummings v. Lynn has been followed in practice; for President Addison there says, “It does not appear that the consideration for which the value was given, was an undertaking that the bond should be. paid, but an assigning of the bond.”
In South Carolina in a case which appears to have been much contested, the majority of the court decided, that the indorsement of the bond by the obligee in blank, will not make him liable to a holder, in case of the insolvency of the obligor; on the general ground that the bond was not a negotiable instrument, and that the intent of the indorsement on the back of it could only be to enable the holder to receive the money for his own use.' Parker v. Kennedy, 1 Bay, 400.
It never can be consistent with the intent of the parties, or with the law, that every man who puts his name on a bond is to be considered as a new drawer of the bond; for the doctrine of the plaintiffs in error goes to that full extent, and if we stop short of that conclusion, they cannot recover in this action. There was no error in the answer of the court.
The second and third exceptions are the same, and respect the opinion of the court with respect to an alleged promise of the defendants to pay. We must take the opinion as applied to the evidence given, not as applicable to every case, — not as an abstract general proposition. I have weighed every part of this evidence, written and oral, and can find nothing to leave to the jury, from which they could infer a new promise to pay this debt; The written evidence states a compromise they had offered. This compromise must have been rejected. Comparing this, as the counsel of the plaintiffs have done, to the indorsement of a negotiable instrument, this offer was neither an acknowledgment nor a waiver, and does not obviate the necessity of proof of notice. If the plaintiffs accepted the offer — good and well; if not, they were to remain in the same footing as before it was made. Chitty on Bills, 308. The oral testimony is far from proving their acknowledgment of liability; they did not deny their liability: that is very far from acknowledging it. The defence they alleged was some indemnity: nothing could be more equivocal than this. Now a promise of this kind, to bind, must be explicit, and made out by the clearest testimony; evidence most unequivocal. Miller v. Hackly, 5 Johns. 375. Griffin v. Goff, 12 Johns. 423. And though the *318 drawer of a bill might by circumstances implied waive his right of defence, founded on the laches of the holder, yet an indorser can only do so by an express waiver: there being a material distinction, in this respect, between the situation of a drawer and indorser. Chitty, 309.
In Borradaile v. Lowe, 4 Taunt. 93, the recognition of liability was not quite so faint as it was in this case. There the defendant, who was an indorser, wrote a letter in answer to the holder of a bill, — “ Sir, I cannot think of remitting until I receive the draft; therefore, if you think proper, you may return it to Trevor and Co., if you consider me unsafe:” it was held not to amount to a waiver of the laches, in not giving notice of the non-payment.
On the whole of this record, I do not perceive any error, and the judgment must, in the opinion of the court, stand affirmed.
Judgment affirmed.