HOUK *against* FOLEY for the use of GAULLAGHER.

### IN ERROR.

The words " without defalcation," in a single bill or note under *seal,* do not preclude the obligor from making a defence to a suit brought by the assignee for valuable consideration.

Every bond or note under seal is liable to investigation as to its truth and fairness in the hands of the assignee or indorsee—the single exception is where the assignee calls on the obligor who tells him there is no defence, or where the obligor induces the assignee to take it.

AN action was instituted in the Common Pleas of Cumberland county, by *James G. Foley,* for the use of *George Gaullagher,* against *Adam Houk,* on the following note under seal, viz:

*Carlisle,* 23*d August,* 1826.

"Three months after date I promise to pay to *James G. Foley* or order, two hundred dollars lawful money of the United States, *without any defalcation,* being for value received, as witness my hand and seal.

*Adam Houk,* [SEAL.]

*Present, W. B. Irvine.*

On which there was an indorsement in blank "*James G. Foley.*"

On the trial of the cause, evidence was given by the defendant to show a partial failure of the consideration for which this note was given; and it was contended, that any defence that would be available against *James G. Foley,* would be good against his assignee.

The jury returned a special verdict, as follows:

"We find the fact, that the consideration of the note has in part failed, so as to reduce the sum really due to the plaintiff to $100,06¼. That the said note was indorsed in blank by *Jas. G. Foley,* and suit thereon was brought and prosecuted for the use of *Geo. Gaullagher.* But being uninformed, whether the said indorsement and the institution and prosecution of the suit in the form aforesaid, defeats the right of the defendant to make any defence to the note arising from its failure of consideration, our finding is— that if the defence can be legally made in manner aforesaid, then judgment to he entered for the plaintiff for. $100 6¼, with six cents costs, but if such defence cannot be made in law to any

(Houk v. Foley.)

part of the consideration, then judgment to be entered for the plaintiff for the whole amount of the note with interest.

The Court below gave judgment for $239 00, and costs.

*Alexander* for the plaintiff in error.

By the act of 1797, section 1, all notes in writing *commonly called promissory notes,* when drawn " without defalcation," are discharged from defalcation or set off in the hands of an indorsee; but where a bond or speciality is assigned, the act of 1715, sec. 8, requires the assignment to be under hand and seal, before two or more credible witnesses, and then the 3d section of the same act, distinctly recognizes that no more is to be recovered, than at the time of such assignment could have been recovered by the person to whom the same was made payable.   This is the case where there is a legal assignment, here the transfer is a mere blank indorsement.    There is no rule of law to prevent the obligor of a bond or speciality from making a defence against the assignee unless where he has been called on previously to the assignment and has stated that he will pay the amount of such bond or specialty; but the assignee takes it subject to all equities; this was settled in *Elliott* v. *Stanard,* 1 *Penna. Rep.* 24.    That the assignee of a bond takes it at his own peril so as to let in every defence that the obligor had against the obligee at the time of the assignment, is also decided in *Wheeler* v. *Hughes,* 1 *Dallas,* 23. *Inglis* v. *Inglis' executors,* 2 *Dallas,* 49.   *Rundle* v. *Ettwein,* 2 *Yeates,* 23.   *Solomon* v. *Kimmel,* 5 *Bin.* 232.   *Bury* v. *Hartman,* 4 *Serg. & Rawle,* 177.

The difference between negotiable papers and papers not negotiable is laid down in *Wheeler* v. *Hughes;* and it will be observed that all the rules that go to exclude a defence from being set up against an assignee apply alone to *negotiable* paper ; this is not such.    *Gochenauer* v. *Cooper,* 8 *Serg. & Rawle,* 203.   *Chitty on Bills,* 108, chap. 4.

In *Warren* v. *Lynch,* 5 *Johnson,* 238, the question was whether a note were sealed or not: if sealed, the defence was good; if not the plaintiff could recover.   There are rules existing for the benefit of *trade,* that are solely applicable to mercantile transactions: therefore when one *partner* executed a warrant of attorney for *both,* it was held to be bad, because it was not required by trade: nor is a seal in the course of trade. *Gerard* v. *Basse,* 1 *Dallas,* 121.

*Gaullagher* for defendant in error.

The cases cited by the plaintiff in error show nothing more

(Houk *v.* Foley.)

than that the assignee of a *mere* specialty takes it subject to all the equity between the original parties. But here the special words in the body of the note give it the character of commercial paper, and are equivalent to an express agreement to that effect. A commercial character may be communicated by agreement of the parties to it, notwithstanding the general law. In *Lewis* v. *Reeder*, 9 *Serg. & Rawle*, 196, this doctrine is expressly recognized, it is there said it would be extraordinary indeed if there were any act of assembly forbidding the maker of a promissory note to agree that he will pay it without defalcation. Such an agreement makes a note more valuable, because of more easy circulation, and no man has a right to complain of hardship, who is compelled to do no more than he has engaged to do. Had *Gaullagher* called on *Houk,* and been informed by him that he had no defence, *Houk*, as has been admitted, would have been concluded from setting up one. But there was no necessity for calling on *Houk,* when *Gaullagher* had his written agreement to the same purport, which placed him on as good a footing as if *Houk* had told him in person that he had no defence. The time of the agreement is not material, for the party is benefitted by it; it gives to his paper a circulation and value, which it would not otherwise have.

In 2 *Yeates,* 543, *Carnes* v. *Field,* the obligor who had bought lands which proved to be of no value was bound, because he agreed when the assignee took the bond, that he had no defence. The words "without defalcation" prevent an inquiry into the original consideration of the note; which was the point decided in *Lewis* v. *Reeder*, moreover it would be a fraud in *Houk* after such agreement to make a defalcation against an innocent assignee for full consideration.

*Carothers* on the same side.

The agreement "without defalcation" must have some meaning. It is these words which give to commercial paper its character—they import that the party shall not make a defence going to the consideration. In the case of *Lewis* v. *Reeder*, 9 *Serg. & Rawle,* 196, such was the effect given to them by the decision of the Court. The act of assembly has a reference to commercial notes transferrable at bank in the city of Philadelphia, but this act does not preclude parties from making an agreement not to defalk, and this is the view taken by Court in the case just cited. The right to make such agreement is important in many ways; it is the only mode a bond or note can be made available to raise funds. It is no answer to say that if such an agreement is allowed the unwary might be imposed on, for the same argument would

(Houk *v.* Foley.)

apply to all cases. The question is upon whom is the loss to fall? it ought to fall on *Houk,* for he agreed to bear it by the very terms of the note.

*Alexander* in reply

When a circumstance of suspicion exists, the effect of the words "without defalcation" is avoided. They do not amount to a contract that the defendant will in any event pay the bond he gave, if so he would be estopped from making defence against the obligor himself. They are words that are used by the great body of our yeomanry without attaching any definite meaning to them.

In *Lewis* v. *Reeder,* the case relied on by the defendant in error, the principles alleged to have been decided there are used *arguendo* by the Chief Justice, there too it was the case of a *promissory* note, this is that of a single bill. Even in case of a promissory note if taken after it is due, or if the party have applied for the benefit of the insolvent laws, or if the note is out of the usual course of business, there these principles do not apply. *Lighty* v. *Brenner,* 14 *Serg. & Rawle,* 133. Now the note in question being a note under seal is not in the usual course of business.

The opinion of the Court was delivered by

HUSTON, J.—There has been a struggle within the last twenty years to alter the law of this state in an important particular. I allude now to the law prescribed by the act of assembly respecting the assignees of bonds and notes. The decisions of this Court for the last seven or eight years might seem to render any further opinion unnecessary, but as the same thing is brought before us in what is called a new shape, we will consider it. The case of *Lewis* v. *Reeder,* 9 *Serg. & Rawle,* 193, it is said gave rise to the present decision, (or rather a dictum in it) and the same has been urged here: that case arose on a promissory—this on a single bill or note sealed. The opinion of the late Chief Justice that if *McCullough* v. *Huston,* had been decided ten years later, the decision would have been different, when coupled with the declaration that it is not now to be disturbed seems but a slight ground for taking up the matter at the present day and carrying it beyond what the law or usage of any part of the world ever sanctioned—for I know of no law in which or by which a bond or single bill has the same qualities as to negotiability as bills or notes have. I have before said that in the nation most mercantile—in England, it has not been even attempted to give to bonds and single bills the qualities of negotiable paper.

(Houk *v.* Foley.)

It is not necessary here—our legislature has provided certain modes by which a man who owes a debt may give an evidence of that debt, which shall have all the negotiable qualities of a bill of exchange.  If that form is not adopted the evidence of debt cannot have those qualities by the express law of the land.  If the Courts had the power of altering this, there is a great objection to it.  If the legislature make a change it affects all evidences of debt drawn after the passage of the law.  If the Court make it, it retrospects and affects all those already in existence.

Perhaps out of a million and a half of inhabitants of Pennsylvania, two hundred thousand (and this is a large allowance) may have drawn a paper in the mercantile form, and with the intention that it would or might be indorsed, and be collectable without regard to the state of accounts between the original payor and payee.  The residue of the people never drew or saw such a paper—these last know from their youth that a note or bond is only evidence of a debt, of its amount and the time of payment—and they also know that before the day of payment, or rather before actual payment; a defence from fraud or want of consideration, can be made to the debt secured by bond or note, precisely as it can to a debt proved by parol, and further that if there has been fraud or imposition the matter is as open to inquiry as if sued by the original obligee.

Our law has then distinctly settled that a promissory note drawn at a certain place, and in a certain manner, or drawn at any place with a view to be used as negotiable paper, and put into a bank, shall have the effect intended by the parties.  It is also settled that specialities or evidences under seal have in case of the obligor's dying insolvent, preference before promissory notes.  The two are in other respects essentially different, and we cannot, and for myself, I would not if I could, abolish the distinction.

I have said mercantile policy does not require that bonds and notes indorsed should have the qualities of mercantile paper.  There are reasons why the law as to bonds and notes not mercantile should continue as heretofore.  If every one who has imposed on another in a contract and got a note under seal could obtain the effect of his fraud or villainy by assigning his note, it would neither promote the character of our judicial system, nor the morality of our citizens.

The case in 13 *Serg. & Rawle,* 317, was an attempt to turn a note exactly like this into a mercantile note, by a blank indorsement—and to follow that up by holding the indorsee liable as on a bill of exchange—but it did not succeed.  The assignor of a bond indorsed or not indorsed, has not yet been held liable directly in a suit on the assignment; but on mercantile paper, the indorser, where diligence has been used, is always liable on the

(Houk *v.* Foley.)

indorsement. If the obligor can be made liable at all events to an assignee, it must follow that the other incident of mercantile paper goes along, and the assignor must be liable directly on his assignment. ,

The argument that the party may sign a note without delfalcation, and thus preclude himself from a defence, presumes too much, and not enough:

First, if it avails at all, it will in its terms preclude a defence to a suit by the obligee, as much as by the assignee.

Next, if it avails, then a bill to pay $100 in 10 days, and in case of failure to pay $200, would enable the holder to recover $200 on the eleventh day—and a mortgage might be drawn not redeemable after a certain day, though the transaction was for a loan of money and security for it at first. Now none of these will be pretended, no device or ingenuity of man has been able to give such form to any instrument for securing money, as that some Court has not existed or grown up which would relieve from fraud, oppression and extortion. Chancery power began and grew on this, it was the rock on which its present enormous power was built,—I omit gaming, and usury, &c. all of which might be protected on this plan;—but the argument does not prove enough. Defalcation is setting off another account or another contract—perhaps total want of consideration founded on fraud, imposition, and falsehood, is not defalcation; though being relieved in the same way they are blended. Mercantile transactions require honesty—are based on good faith—they never can be promoted by giving sanction and validity to what is not fair, what is founded on deception.

Our law however has provided different securities for debt, and has given different qualities, advantages and disadvantages to each: the criterion necessary to be mentioned in this case is, that the paper is a bond, it has a seal, and every paper so drawn is liable to investigation as to its truth and fairness in the hands of the assignee or indorsee, it depends on the seal and the act of assembly, and the single exception is where before taking the paper the assignee calls on the obligor and he tells him there is no defence; or where the obligor induces the assignee to take it.

Judgment of the Court below reversed and judgment entered for plaintiff for $100.06¼.