# Case No. 8,494.

## LONSDALE v. BROWN.

### [4 Wash. C. C. 148.] 1

Circuit Court, E. D. Pennsylvania. Oct. Term, 1821.

BILL OF EXCHANGE—ASSUMPSIT—NEW PROMISE—CONDITIONAL—FORBEARANCE—JUDGMENT ENTERED ON GOOD COUNT—NEW TRIAL.

1. In what cases a past consideration is good to support an assumpsit.
[Cited in Carman v. Noble, 9 Pa. St. 371.]

2. In assumpsit on a promise to pay a debt due by the promiser, if plaintiff would give time, whenever the promiser should be able; the declaration need not state that the promise was accepted by the plaintiff. It is sufficient to aver that time was given, and that the defendant is able.

3. On a new promise by the debtor to pay a continuing debt, the creditor may sue on the old debt, and give the new promise in evidence to avoid the act of limitations, &c. or may sue upon the new promise. But if the new promise be conditional, it cannot be given in evidence in a suit for the old debt.
[Cited in Taylor v. Slater, 16 R. I. 92, 12 Atl. 729.]

4. A promise to pay in consideration of forbearance for a short time, is not good to uphold assumpsit. Aliter, if the forbearance be for a convenient or reasonable time, in general or specific terms, or indefinitely.

5. A promise to pay in consideration of forbearance, when defendant should be able, is good, and is to be construed until he is able.
[Cited in Glasscock v. Glasscock, 66 Mo. 630.]

6. If the evidence apply to one count which is good, and the verdict be general, the court will direct the judgment to be entered on the good count. But on a writ of error this cannot be done; and the court must order a venire facias de novo.

7. Quaere, if a bill of exchange drawn in one state on another, is a foreign bill; and whether the protest of such a bill is good evidence?
[Cited in Musson v. Lake, 4 How. (45 U. S.) 285.]
[Cited in Williams v. Putnam, 14 N. H. 541.]

8. If there be two issues, or issues on two counts, and the verdict be not contrary to evidence applicable to one of them, the court will not grant a new trial, though the verdict be contrary to evidence as to the other.
[Cited in State v. Templin, 122 Ind. 238, 23 N. E. 698.]

9. If the jury take out with them a deposition, part of which was deemed inadmissible by the

---

1 [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

court, but that part totally inapplicable to the count on which the judgment is given, this is no ground for a new trial. Aliter, if it was delivered to the jury by the counsel of the party in whose favour the verdict was given.
[Approved in Rawson v. Curtiss, 19 Ill. 481.]

10. A promise was made by the defendant, the drawer of a protested bill of exchange. that if plaintiff would give time, he would pay the bill when he should be able. In an action on the new promise, the plaintiff is entitled only to the sum stated in the bill, and to interest from the time when defendant was able, and not to any damages. If the jury give more, the court will set aside the verdict, unless the plaintiff enter a remittitur for the overplus.

[This was an action upon a bill of exchange. In a former suit before the court, Case No. 8,493, there was a verdict for the plaintiff. The case is now heard upon motion of defendant for arrest of judgment and for new trial.]

WASHINGTON, Circuit Justice. This case comes before the court upon two rules to show cause. 1. Why the judgment should not be arrested. And 2. Why a new trial should not be granted.

1. In support of the first rule, certain exceptions were taken to the second, third, fourth and fifth additional counts in the declaration. We shall direct our attention principally to the fourth count, because this was the one which the counsel seemed to consider the most faulty. It states, "that the defendant being on the 1st of November, 1809, at Philadelphia, indebted to the plaintiff on a certain bill of exchange, of which the defendant was the drawer, in the sum of $600, he then and there averred to the plaintiff that he was then not able to pay the said bill, but promised the plaintiff that if he would grant to the defendant indulgence, in time he the defendant would pay to the plaintiff the amount of said bill, whenever he the defendant should be able to pay the same; and the plaintiff avers that he did grant a reasonable indulgence in time to the defendant; and further, that at the time this action was brought, the defendant was able, and had the means to pay the said bill, but that he had nevertheless refused to pay the same," &c. The objections made to this count are, 1. That the consideration being past, it affords no ground to support an assumpsit to pay an existing debt. 2. That the contract as set forth was all on one side; the count not stating that the conditional promise of the defendant was accepted by the plaintiff. 3. That although the promise might have been given in evidence to establish the original debt, if the action had been to recover the same, it is not of itself a ground of action; because, if it be, then there would be two independent subsisting contracts, upon either of which the plaintiff might bring his action. 4. That forbearance is not a sufficient consideration to raise an assumpsit, unless it be specific and reasonable in point of time, which this is alleged not to be.

In support of the first objection, the counsel

cited no authorities, and we take the rule to be, that a promise to pay a sum of money on a consideration executed, if it was induced by the request of the defendant, or by some previous duty, or if the debt be continuing at the time or is barred by a rule of law, or provision of some statute, as the act of limitations, bankruptcy, and the like, is good to maintain an assumpsit. This is laid down by Powell in his Essay on Contracts, 350, 351, who cites Hodge v. Vavisor, 1 Rolle, 413; Johnson v. Astell, 1 Lev. 198; T. Raym. 260. See, also, 3 Salk. 96. But it is unnecessary to examine this position further, because in this case the promise was "to pay, if the plaintiff would give time to the defendant;" which was a new consideration, and clearly sufficient to uphold the promise, being a benefit to the defendant, and an injury to the plaintiff. The cases upon this subject are both numerous and uniform, a few of which only it will be necessary to refer to. Bidwell v. Catton, Hob. 216; Cro. Eliz. 74, 75, 849, 881, 665; Mapes v. Sidney, Cro. Jac. 683; 1 Rolle, Abr. 25, 27, pl. 34, 49.

The second objection is opposed by all the cases and precedents which refer to this subject. In all the cases referred to in answer to the first objection, where a new promise in consideration of forbearance was the ground of the action, the declarations state the promise, the consideration, and the forbearance without any averment that the plaintiff had agreed on his part to forbear. Such too are the precedents. See 2 Chit. Pl. 82–84. The case of Mapes v. Sidney, Cro. Jac. 683, was assumpsit on a promise to pay in consideration of forbearance, with an averment that the plaintiff did forbear for such a time, and this was decided to be sufficient, and that, if the defendant had paid this debt, and the plaintiff had afterwards sued on the original cause of action, the defendant might have maintained an action on the case against him.

As to the third objection, it may be conceded, that an action may be maintained on the original cause, and the new promise given in evidence to avoid the operation of the act of limitations, or to obviate an objection grounded on the omission to give due notice of the dishonour of a bill of exchange. This was the case of Thompson v. Osborne, 2 Starkie, 98, and there are many cases of the same kind which might be quoted. But it is not less true, from the cases referred to under the first head of objections, that the action may be supported upon the new promise; and Selw. N. P. p. 52, who states that the plaintiff is not obliged to declare on the new promise, but may do so on the old, and give the new in evidence, adds, "that some pleaders of eminence declare on both promises." Whether, upon a declaration on the old promise, the plaintiff can give in evidence a new conditional promise, varying from the old one, may admit of some doubt. In the case of Davies v. Smith, 4 Esp. 36, and Besford v.

Saunders, 2 H. Bl. 116, this was permitted. In a former action between these parties upon this bill of exchange [Case No. 8,492], this court was of opinion that a conditional promise could not be given in evidence, in answer to the act of limitations, because it did not correspond with the promise laid in the declaration, and if put into the form of a plea, it would have been a departure from the declaration. This opinion is strongly supported by the case of Hickman's Ex'rs v. Walker, Willes, 27, which was an action by an executor on a promise to the testator; and upon a plea of the act of limitations, it was decided to be a departure to reply a new promise to the executor. See, also, Dean v. Crane, 1 Salk. 28; 2 Ld. Raym. 1101; 3 East, 409; 2 Hen. & M. 401. In some of the above cases, it is said that the plaintiff should have declared on the new promise to himself; and in Executors of the Duke of Marlborough v. Widmore, 2 Strange, 890, the plaintiff had leave to amend his declaration for that purpose. Until otherwise instructed by the supreme court, we shall adhere to the opinion given in the former case.

4. The last objection was principally relied upon by the defendant's counsel. It was strongly insisted, that no specific time of forbearance was stipulated in this case, and that the plaintiff might have brought his suit in an hour after the promise was made. If the promise in this case was such as the counsel have contended it was, we admit the conclusion, in point of law, to be correct. If, for example, the promise of forbearance be for a short time, such a forbearance would not be a good consideration, and that for the reason assigned by the counsel. Lutwich v. Hussey, Cro. Eliz. 19. But we take the rule to be, that, if the promise be to forbear for a convenient or reasonable time, either in general or specific terms, or indefinitely, it is sufficient to maintain assumpsit; for in the latter case the court will intend the forbearance to be total and absolute, and after forbearing for a reasonable time, the plaintiff may bring his action upon the new promise, and is not obliged to wait all his life. Mapes v. Sidney, Cro. Jac. 683. Lingen v. Broughton, 3 Bulst. 206; Rolle, 379; Moore, 1167; Mature v. West, Cro. Eliz. 665. Comyn, Dig. tit. "Actions on the Case upon Assumpsit," B 1, states the rule that forbearance generally is a good consideration. He cites Hob. 216, and Cro. Eliz. 387, and adds as the reason, that it shall be intended a total forbearance, for which he refers to Mapes v. Sidney, before mentioned, and Therne v. Fuller [Cro. Jac. 396]. In Philips v. Sackford, Cro. Eliz. 455, it was laid down, that a promise to forbear indefinitely was not a good consideration; but this decision was clearly overruled by the other cases above referred to. In this case, however, there is no necessity to rely upon these authorities, because here was a reasonable and convenient time of forbearance fixed; and although it was uncertain at the time

as to its duration, yet it was referable to a certain standard, viz. the ability of the defendant to pay. For we understand the promise to be "that the plaintiff would forbear until the defendant should be able;" on the happening of which, the defendant promised to pay. This is precisely the same in principle as the case of May v. Alvares, Cro. Eliz. 387, before notice for another purpose. There the promise was to deliver goods in six months, in consideration of forbearance generally. The plaintiff did not promise expressly to wait six months, but the court said that this was to be implied, and the consideration was deemed sufficient to uphold the promise.

Upon the whole we are of opinion that none of the objections to this count are supported. We have selected the fourth count, because that is the one to which the evidence applied, and we have endeavoured to show from the cases, that the objections to this count are untenable. It is unnecessary, and would be a waste of time, to notice the other counts, because, if any one count be good, and the evidence given at the trial applied only to that count, and a general verdict be given, the court may direct the judgment to be entered on the good count, and we find, from the English cases, that the court has even gone so far as to direct the postea to be amended by the notes of the judge, and the verdict to be entered upon the count to which the evidence given at the trial applied, and for the defendant on the others. Eddowes v. Hopkins, 1 Doug. 376. But this cannot be done on a writ of error, and in that case the court can do no more than award a venire de novo. Grant v. Astle, 2 Doug. 730; Williams v. Breedon, 1 Bos. & P. 329. Now, in this case, the evidence applied to the fourth count, and in some respects to the fifth, which is equally unexceptionable. A part of the evidence applied to the original counts, to which no objection is made, and which, on the motion in arrest of judgment, are not before the court.

The reasons assigned for a new trial are the following:

1. That a protest for non-acceptance of an inland bill of exchange was admitted in evidence. The inquiry then is, whether a bill drawn in New Orleans, upon a person living in Pennsylvania, is an inland or a foreign bill? To this inquiry my attention has been directed, because to this alone the arguments of the counsel were applied. The question is in a great measure new, as well as difficult, and involves general principles, in relation to the federal union of these states, which I consider as being highly important. "Foreign" and "inland," when applied to bills of exchange, are terms purely technical, which we have borrowed from the English law, to which it is proper we should refer for their true meaning. The English elementary writers, in distinguishing the one

kind of bill from the other, make use of different expressions, all of which, however, seem intended to mean the same thing. Kyd, in his Treatise (page 8), describes foreign bills to be those which pass from one country to another, and inland bills, such as pass between persons residing in the same country. Evans (page 2) states a foreign bill to be "one which is drawn by a creditor in one kingdom, upon his debtor in another, and an inland bill, as one where the drawer and the drawee reside in this kingdom." Blackstone, in his Commentaries (volume 2, p. 467), uses the word "abroad," when speaking of a foreign bill, and "kingdom," in reference to an inland bill. If the phrase "kingdom" is to be taken in its strict sense, to mean the territories belonging to the king, it would follow, that bills drawn in the West Indies upon England, would be considered as inland, which they most unquestionably are not. No direct authority was produced by the counsel on either side, nor have I been able to meet with any, as to the particular character of bills drawn out of England, but within the king's dominions, on England. It was said by Treby, J., in the case of Bromwich v. Lloyd, 2 Lutw. 1582, "that bills of exchange at first extended only to merchant strangers trading with English merchants, and afterwards to inland bills between merchants, trading, the one with the other, here in England, and afterwards to all traders, and of late, to all persons trafficking or not;" from which expressions it would seem, that inland bills were confined to persons residing in England.

In the argument of this cause, it was said by counsel, that bills drawn in Scotland upon England, since the union, were treated as inland; and if any direct decision to that effect had been produced, I should have deemed it worthy of serious consideration. I have spared no pains, during the vacation, in searching for such a decision, but without success. Marius (page 2) uses some loose expressions to that effect, but it would be very unsafe to rely upon them as authority. In Swift's Treatise on Bills (page 291), the learned author lays it down, that bills drawn in Ireland before the union, and in their colonies, on England, were treated as foreign bills. He adds, "I know not whether the question has arisen, how a bill shall be considered drawn in any other state in the union; but the practice has been, to admit protests for non-acceptance and non-payment of bills, under the official seal of notaries public, to be conclusive evidence of the fact, in like manner as in the case of foreign bills; of course, they may be considered to be foreign bills." I refer to what is here stated, not as the kind of authority which I was in search of, but as the statement of a learned judge, in a highly commercial state, in relation to the practice of lawyers and merchants upon this subject. In the case of King v. Walker, 1 Black. [66 U. S.] 286, it

was said by counsel, and not contradicted by the bench, or bar, "that it had been questioned whether Scotch bills of exchange were inland or foreign bills, and been determined by Chief Justice Ryder, at Guildhall, that they were foreign bills." That inland bills, prior to the statute of the 8 & 9 Wm. III. c. 17, were considered as confined to England, is strongly to be inferred from the provisions of that statute, which speaks of bills drawn at any place in the kingdom of England, dominion of Wales, or town of Berwick upon Tweed; although Wales and Berwick had been, previous to that statute, as firmly united to England, as Scotland was after the union. It is possible that naming Scotland, and the town of Berwick, was unnecessary, and that they might have been considered as included under the general terms, "kingdom of England." However this might have been, it would seem that the legislature which enacted that statute thought otherwise, or it is not likely that they would have been included by express words. If bills drawn in England on Scotland be inland bills, they are of a peculiar character, as it is perfectly clear that they are not within the provisions of the above statute, and consequently cannot be protested, nor are they entitled to any of the other privileges bestowed by that statute upon inland bills; and if in fact they are so treated, it is inconceivable that that portion of the British dominions, and even England, should for so long a period have been subjected to the inconvenience of having a species of commercial paper, which is neither a foreign bill, nor a statutory inland bill. Unless they are considered and treated as of the former description, it is highly probable that the statute 8 & 9 Wm. III. would have been extended to Scotland, as it was to Wales and the town of Berwick. If in point of fact, those bills are treated as foreign (a conclusion to which my mind strongly inclines,) it cannot but have a strong bearing upon this case. The union between England and Scotland is, politically speaking, as intimate as between England and Wales, or between the different counties of either. They form one kingdom; are subject to the same government, and are represented in the same legislative body; and although the laws and customs of Scotland, in force at the time of the union, were suffered to continue, yet they are alterable by the parliament of Great Britain, even as they relate to private rights, if the alteration should be deemed for the evident utility of the people of Scotland. How different is the union of these states? They are, in their separate political capacities, sovereign and independent of each other, except so far as they have united for their common defence, and for national purposes. They have each a constitution and form of government, with all the attributes of sovereignty. As to matters of national concern, they form one government, are subject to the same laws, and

may be emphatically denominated one people. In all other respects, they are as distinct as different forms of government, and different laws can render them. It is true, that the citizens of each state are entitled to all the privileges and immunities of citizens in every other state; that the sovereignty of the states, in relation to fugitives from justice and from service, is limited; and that each state is bound to give full faith and credit to the public acts, records, and judicial proceedings of her sister states. But these privileges and disabilities are mere creatures of the constitution; and it is quite fair to argue, that the framers of that instrument deemed it necessary to secure them by express provisions.

In the case of Warder v. Arell, 2 Wash. (Va.) 282, the question in part was, whether the tender laws of Pennsylvania, where the contract was made, ought to be regarded by the courts of Virginia, where the suit was brought? And throughout the opinions delivered by the judges, Pennsylvania was treated as a foreign country. The president of the court is express upon this point. He observes "that in cases of contracts, the laws of a foreign country, where the contract is made, must govern. The same principle applies, though with no greater force, to the different states of America; for though they form a confederated government, yet the several states retain their individual sovereignties, and with respect to their municipal laws, are to each other foreign." If the union between the states be so complete, that a bill drawn in one state upon another is to be treated as an inland bill, one would suppose, that a discharge under the insolvent laws of one state, though the creditor resided in another state, would be regarded as a discharge in every other state. And yet the law is otherwise laid down in Massachusetts and New York, and perhaps in other of the states. Van Raugh v. Van Arsdaln, 3 Caines, 154; Smith v. Smith, 2 Johns. 236. These decisions are in strict conformity with the rule in England, that a discharge under a foreign bankrupt law is no bar of a debt contracted in England, due to a creditor residing there. 1 East, 6. In Pennsylvania the rule of reciprocity is observed, and the courts here will discharge on common bail a person who has been discharged by the insolvent laws of another state; if the courts of that state use the same courtesy towards the citizens of Pennsylvania. 2 Bin. 20. Even the judgments of other states are considered in the courts of Vermont, Massachusetts and New York as being so far foreign, that the grounds of them may be inquired into, when impeached by the defendant. Bartlet v. Knight, 1 Mass. 401; Hitchcock v. Aicken, 1 Caines, 460. In Hubbell v. Coudrey, 5 Johns. 132, the court considered a judgment rendered in the state of Connecticut as a simple contract debt; and so a judgment rendered in a French tribunal would be considered in the

English and American courts. It seems very clear that all the above cases proceed upon the principle laid down by President Pendleton before noticed, "that with respect to their municipal laws, the states are foreign to each other." And if this be so, I am at a loss to conceive how a bill of exchange drawn in one state, upon a person residing in another, can be considered as an inland bill. The inconveniences which would result from so considering them, would lead me to hesitate long before I could be induced to do it, unless indeed I were pressed by decisions of the courts of the United States, or a current of state decisions. It may be sufficient to point out one of the inconveniences alluded to, viz. the necessity of proving by witnesses or depositions, in every suit upon such a bill, presentation and a demand; since the protest could not be given in evidence to prove these facts. It is greatly to be feared that such a necessity would, in no small degree, cramp the circulation of this species of paper. The only case I have met with in which these bills have been considered as inland, is that of Miller v. Hackley, 5 Johns. 375, which I acknowledge to be the decision of a court greatly to be respected. It is however a single authority, and this particular question does not appear to have been very minutely examined by the bench or bar. Indeed, as the cause was decided upon the ground of want of notice of the protest, it was immaterial whether the bill was foreign or inland, since the objection was equally fatal in both cases; and it was therefore the less necessary to examine with attention the other point. It may be worthy of remark, that the counsel for the plaintiff in that case placed great reliance upon a note in 2 Tuck. Bl. Comm. p. 467; in which the learned editor, speaking of inland bills of exchange, in reference to Virginia, describes them as bills drawn in that state or any other of the states. But the counsel could not have been apprized of the circumstance, that by a law of that state, passed on the 28th of December 1798, it was declared, that bills of exchange drawn by any person residing in Virginia, on any person in the United States, should be considered as an inland bill, and the act proceeds to give damages and interest in case the same should be protested. I remark further, that it is not easy to reconcile the decision in Miller v. Hackley, as to this point, with those before mentioned, which treat the states, in respect to their municipal laws, as foreign to each other.

I believe that the general opinion of commercial and legal men in the United States has not corresponded with the doctrine laid down in the above case. This may fairly be concluded from the circumstance, that these bills have uniformly been protested, and so far as I am informed, this is the second case only in which the validity of those protests, or their admissibility in evidence has been questioned. In Swift's Essay on Bills, before referred to (page 336), the author observes, that "it is generally understood by merchants in this state, that on bills drawn here on a foreign country, and returned protested, twenty per cent. damages is allowed; and that on bills drawn on any other state in the Union, (which are to be considered as foreign bills) two and a half per cent. shall be allowed in lieu of all costs, charges, and damages." Upon the whole, I am of opinion, that upon principle, as well as for the sake of commercial convenience, the bill in question is to be considered as a foreign bill, and therefore that the protest was properly admitted in evidence.

2. The second reason assigned, why a new trial should be granted is, that the verdict is against evidence; and to make this out, it was insisted by the counsel, that the jury, not having said on which count their verdict was found, they may have found it on the counts on the bill of exchange, contrary to the evidence; which proved, that the former suit, in which a verdict was given for the defendant, was founded upon this very bill. We do not think that this is a ground for a new trial; because if there be two issues, or issues on two counts, and the verdict be not contrary to evidence as to one of them, the court will not grant a new trial, though it be contrary to evidence as to the other, for since the verdict is right in part, the court will not set it aside. 5 Bac. Abr. tit. "Trial," L (Wils. Ed.) § 4, p. 662; 1 Barnes, Eq. Prac. 9, 317, 333. Now, we think, there can be no question but that the verdict on the fourth count, before noticed, is in strict conformity with the evidence.

3. The next reason alleged is, that the jury took out with them a deposition, part of which was objected to at the trial by the defendant's counsel, and the objection allowed by the court. The fact, as stated, is fully made out in proof, and the question in point of law is, whether this be a sufficient ground for setting aside the verdict? If the parts of the deposition, which were not read, were material to the plaintiff's case, we should think that the verdict ought not to stand. 5 Mass. 405. So if the deposition had been delivered to the jury by the plaintiff's counsel, without the consent of the other side, although it fully appeared that the rejected parts had not been read by the jury. Cited Pratt's Case, 21 Vin. Abr. 451. But if the evidence be altogether irrelevant, and immaterial to the issue, and the deposition is taken out by the jury by mistake, we think it would be going too far to set aside the verdict, when the court can not but perceive that it could not have influenced the finding of the jury. The rejected testimony related to an instrument which the witness had once seen, by which O'Neal, the indorser of the bill of exchange mentioned in the original counts, acknowledged that he had no claim upon the plaintiff, in consequence of the transfer of the bill to him, and released the plaintiff from all liability. It has not

the slightest relation to the counts upon the new promise, which are founded on a distinct cause of action, and if the verdict correspond with the evidence on those counts, or either of them, the court ought not to set aside the verdict, because evidence was improperly taken out by the jury, not applicable in any respect to those counts, but to others founded on a distant cause of action.

4. The last reason assigned for a new trial is, that the verdict gives damages and interest on the bill of exchange. In this we think the jury did wrong, as no evidence was given to support the claim of damages, even if we could construe the defendant's promise as extending to them. We think the plaintiff was entitled to recover only the amount of the bill of exchange with interest, if the jury thought proper to give it in the name of damages, and that he may cure this defect in the verdict, by releasing all beyond what he is justly entitled to. There are three periods from which the interest may be calculated: The protest of the bill; the time of the promise; and the ability to pay. We reject the first, because this action is to be considered as founded on the new promise, which has no further connection with the bill of exchange than to ascertain the amount due, and to show a subsisting and continuing consideration. The promise proved is, "that the defendant would pay the bill of exchange if he ever got able;" that is, "that he would pay $600 when he should be able." If the promise had been to pay the bill generally, in consideration of forbearance, the defendant could not have been properly chargeable with interest, but from the time when the promise was made. But it was to pay when he should be able. Time then was given until he should be able, and interest could not properly be chargeable, until the contingency should happen, when payment was to be made, any more than if it had been to pay ten years afterwards, if he should then be able. The promise was of a debitum in presenti, solvendum in futuro; and in such a case, it is clear, that interest is not demandable until the debt is payable, unless an express stipulation to the contrary is made. We are, therefore, of opinion, that the plaintiff is not entitled to retain this verdict, unless he will agree to release all the damages beyond the $600, with legal interest from the time when it is proved the defendant was able.

Bills of exchange drawn in one state of the Union on persons living in another state, partake of the character of foreign bills; and ought to be so treated in the courts of the United States. Buckner v. Finley, 2 Pet. [27 U. S.] 586.