## Silvis *against* Ely.

It is not error to allow the challenge of a juror for cause, upon its appearing that he is interested in the result of the trial, although it becomes manifest in the further progress of the trial that the juror had no interest.

In an action of *assumpsit*, founded upon the promise of the defendant to pay the debt of a third person, it is competent to give in evidence the declarations and acts of the defendant corroborative of the plaintiff's allegation.

M. as the administrator of E. had a judgment and execution against B., which, in consideration of forbearance, S. agreed to pay : S. cannot avail himself of the defence, that the judgment which he agreed to pay was given to E. as an indemnity for endorsements which he made for B., and that he, S., had, since the death of E., paid the notes which he had endorsed.

It is within the power and authority of an attorney at law to stay execution upon a judgment in consideration of the promise of a third person to pay the debt; and such promise is binding, although not made to the creditor himself, nor expressly assented to by him at the time.

Forbearance, either limited or general, is a good consideration for a promise to pay the debt of a third person.

ERROR to the Common Pleas of *Berks* county.

Daniel Mortberger, administrator of Samuel Ely, against William Silvis. This was an action of *assumpsit*, in which the plaintiff declared upon the promise of the defendant to pay him the amount of a judgment and execution of Mortberger, administrator of Ely, against Valentine and G. M. Brobst, which had been levied upon the real estate of Valentine Brobst, in consideration that the plaintiff would forbear to sell the said estate upon the execution.

John Schwartz being called as a juror, was challenged by the plaintiff, who assigned for cause that he was a stockholder and director in the Farmers' Bank of Reading, and read the defendant's notice of special matter as follows :

" You will please to take notice, that in the above case I have added the plea of payment with leave to give the special matter in evidence, under which plea the defendant will offer evidence to

[Silvis v. Ely.]

prove that the original judgment of Samuel Ely *v.* Valentine and George Michael Brobst, entered to August term 1819, No. 101, by virtue of a judgment bond, was given to said Ely, to secure, indemnify him, the said Ely, for certain notes he, the said Ely, endorsed for them in the Farmers' Bank of Reading, and for which he became surety to said bank, all of which notes and judgments recovered on the same, have been assigned and transferred to said William Silvis, and that he is now the owner thereof. You are also hereby notified to produce the said judgment bond, on the trial of the action."

The defendant being requested to produce the assignment of the judgment mentioned in the notice as special matter, declined producing it.

It was admitted that John Schwartz was a director and stockholder in the Farmers' Bank of Reading, but the defendant objected to setting aside the juror. The court sustained the challenge and set aside the juror, to which decision of the court the defendant excepted.

The plaintiff gave in evidence a judgment of Samuel Ely against Valentine and George M. Brobst for $12,000, entered in 1819, and since regularly revived in the name of his administrator, the present plaintiff; also a *testatum fieri facias* to Northumberland county, returned "levied on land and condemned." The following testimony was then given by Henry Rhoads, Esq.:

" I was the attorney employed to collect the judgment of Ely against Brobst. I addressed this letter 11th of December 1837, to William Silvis and Valentine Brobst, Jr., the assignees. I think one to each. The next day, or a day or two after, William Silvis called upon me, and said he had my letter. I stated to him that persons had called upon me and told me if I would expose the Brobst land to sale before the January term, they would give $30 an acre for it; that is, the 1800 tract. Mr Silvis told me not to do it, that he would pay me the money; that he would pay $250 about the 1st day of January, and one-half of the balance about the 1st of May next, and the remainder in the fall following. I don't recollect the time was mentioned in the fall following. I think it was something like six months after the May payment. He paid me $270 on the first of January, or about that time. I owed him $20 for lime, and he threw it in. I can't say it was the 1st day of January when he paid it.

" I did not proceed to sell this property to January term. William Silvis never paid me the half nor the remainder. I don't recollect whether I named to Mr Silvis the person that had offered me the $30 per acre. Mr Silvis said he could sell the property advantageously himself, if he were not pushed. He bargained for some time to have the interest deducted, before he promised to pay it. There was no deduction made. The amount was the debt of Samuel Ely. I had given Mr Silvis a statement of the

III. — 2 L

[Silvis v. Ely.]

Ely claim some time before, and it was known to both of us. It was the same as on the execution."

The plaintiff then offered several items of evidence of the declarations and conduct of Silvis, tending to corroborate the testimony given: to which the defendant objected, and the court overruled the objection and sealed an exception.

After the defendant had given much evidence for the purpose of impeaching that of Mr. Rhoads, he gave in evidence a *testatum venditioni exponas* to Northumberland county upon the judgment against the Brobsts, issued by Henry Rhoads, Esq., the attorney, subsequent to the date of the alleged promise, which was returned "stayed by Mr Rhoads, attorney." The defendant then offered in evidence an assignment, to show that the Farmers' Bank had transferred to William Silvis the judgment of the Farmers' Bank of Reading *v.* Valentine Brobst, George Michael Brobst, and Samuel Ely, which the judgment of Samuel Ely *v.* Valentine Brobst was given to indemnify Ely against, and that Silvis was then the owner, so far as the unpaid balance due the bank extended, of the judgment of Samuel Ely *v.* Brobst, as an equitable defence against the plaintiff's recovery in this suit, and also for the purpose of showing the time when George R. Frill's conversations took place.

To the admission of this evidence the plaintiff objected. The court admitted the evidence for the last mentioned purpose, but overruled it for the first; to which decision the defendant excepted.

Mr. Rhoads was again examined, and testified that the *testatum venditioni exponas* to Northumberland county, issued after the promise of the defendant to pay the judgment, was issued at his instance and request.

The defendant requested the court to charge the jury:

1. That in the absence of his client and without his assent, Henry Rhoads, Esq. had no authority to agree to forbear issuing an execution, and therefore the alleged promise of William Silvis is without consideration.

2. That a *general* forbearance means a *perpetual* forbearance, and as an execution was issued after the alleged contract was made, the plaintiff cannot recover.

3. That the forbearance which is necessary to support a promise, must be in consideration of the promise; and as Henry Rhoads, Esq. had no authority to forbear generally, and Daniel Mortberger did not know of Silvis's promise, there was here no forbearance in consideration of the promise.

4. That H. Rhoads, Esq. had no power to place the judgment of Ely under the control of the defendant, and therefore the *venditioni exponas* to April term 1838, was the act of Daniel Mortberger, and not of the defendant.

5. That even if the defendant did request Mr. Rhoads to issue the *venditioni exponas,* yet as there was no agreement that he

[Silvis v. Ely.]

should continue bound by his alleged 'promise, and nothing said of it, the execution discharged the defendant from all liability, if there ever was any.

6. That the "*fieri facias*" upon which this "*venditioni exponas*" was issued, was irregular and illegal, and also a *venditioni exponas* upon it, and therefore Ely's administrator had no right to issue it, and on this account the alleged promise of the defendant was without consideration, and the plaintiff cannot recover.

7. There is no evidence of any contract to forbear, except a general forbearance, and therefore the plaintiff cannot recover on his counts averring a limited forbearance.

8. That if any promise is proved, it is void for want of consideration.

BANKS, President, after recapitulating all the testimony, referred the matters of fact, which the parties controverted, to the jury, and instructed them as to the law by answering all the defendant's points in the negative.

*Strong* and *Smith,* for plaintiff in error.  A challenge to a juror should not be allowed upon mere suspicion of bias or partiality, for no evidence was given of it.  2 *Jac. Law Dic. Tit. Jury* 2; 16 *Serg. & Rawle* 214; 11 *Serg. & Rawle* 280; 5 *Greenleaf* 333; 4 *Watts* 218.  The equitable defence should have been permitted. A surety having a bond of indemnity, the creditor is entitled to it.  1 *Story's Eq.* 502; 18 *Johns.* 505; 5 *Cow.* 441; 3 *Penn. Rep.* 380.  The judgment of the bank and that of Ely were against the Brobsts: then, suppose the estate of the defendant to have been sold upon either of these judgments, Ely would not have been entitled to take the amount of his judgment out of court, although prior in point of date to the bank, whose judgment was for the same debt, and against Ely as well as Brobst.

But the attorney of a plaintiff has no power to sell and transfer the judgment of his client in consideration of a naked promise of an individual to pay.  8 *Johns.* 351; 7 *Cranch.* 452; 10 *Johns.* 229; 1 *Pick.* 347; *Cro. Jas.* 20; 14 *Serg. & Rawle* 307; 1 *Penn. Rep.* 267; 16 *Serg. & Rawle* 368; 3 *Watts* 357.  If the attorney acted without authority, the contract was without consideration, and not binding on the defendant.  3 *T. R.* 22; 2 *Lev.* 161; 11 *Serg. & Rawle* 200; 5 *Serg. & Rawle* 427.

*Hoffman* and *Darling, contra.*  The juror appeared to be interested when he was challenged, and the defendant refused to exhibit the assignment of the bank, by which it would have been and was afterwards shown that he was not interested.  The amount claimed and recovered from the defendant, was only what the plaintiff had actually paid to the bank, so that the defence offered gave rise to the plain question, whether the debtor to an intestate's estate can set-off the claim of another person against

[Silvis v. Ely.]

the estate, which he has purchased for the purpose. 10 *Serg. & Rawle* 10 : 8 *Watts* 76 ; 8 *Wend.* 530 ; 4 *Johns. Ch.* 13.

If the plaintiff ratified the proceedings of his attorney by acquiescence and bringing this action, it is not for the defendant to object. 14 *Serg. & Rawle* 307 ; 1 *Penn. Rep.* 264. But the act of the attorney was within the scope of his authority. 16 *Serg. & Rawle* 369 ; 10 *Wend.* 461 ; 1 *Watts & Serg.* 251 ; 5 *Peters* 99 ; 8 *Peters* 18 ; 1 *Sumner's Rep.* 544 ; 2 *Louisiana Rep.* 137, 597 ; 6 *Watts* 72 ; 2 *N. Car. Rep.* 252 ; 3 *Serg. & Rawle* 96 ; 4 *Wash. C. C.* 503 ; 2 *Watts* 104 ; 2 *Lev.* 210 ; *Cowp.* 437 ; 1 *Bos. & Pull.* 101 ; 2 *Penn. Rep.* 13 ; 3 *Johns. Ch.* 229, 254.

The opinion of the Court was delivered by

ROGERS, J.—This is an action on the case on a promise to pay the debt of V. & G. M. Brobst to the plaintiff's intestate, in consideration of forbearance. The Farmers' Bank of Reading discounted the note of Valentine and George Michael Brobst for a large sum of money, with Samuel Ely endorser. At the same time Ely took as indemnity from the makers a bond for $12,000, on which judgment was entered. Executions were issued on the judgment from time to time. The makers having failed to pay the note, suit was brought against the endorser, Ely, judgment rendered, and a large portion of the debt was collected from him by sale of his property. George Michael Brobst died, and the surviving debtor, Valentine Brobst, assigned all his estate for the benefit of creditors to the defendant. Various judgments were had against Brobst, some in Berks, some in Schuylkill, and some in Northumberland county, and among others the defendant was a judgment creditor. The plaintiff alleges that in consideration of forbearance the defendant promised to pay the debt due from Brobst to Ely. The court left the facts to be determined by the jury, whether there was an agreement as stated between the plaintiff's intestate and the defendant; and whether the plaintiff had performed his part of the agreement. The investigation resulted in a verdict for the plaintiff; and the inquiry is, whether in arriving at that result the court erred in the admission or rejection of evidence, or in the charge. The case resolves itself into three points : 1st. Whether there was a contract by persons competent to make it. 2d. Whether there was a consideration for the promise. And 3d. Whether the contract was afterwards rescinded. These general heads, with some preliminary matters, embrace the whole case.

First error is in rejecting a person because he was a stockholder and director in the Farmers' Bank of Reading. Interest is a principal cause of challenge, and for that reason the juror was incompetent in a cause in which the bank had an interest. It appeared that the defendant took defence, in part, under an assignment of a judgment against Ely. The plaintiff gave the defendant

[Silvis v. Ely.]

notice to produce the assignment, which, for some reason not explained, he declined. The court had, therefore, a right to presume that the assignment contained a guaranty of the debt, and for this reason there was nothing wrong in setting aside the juror. It is nothing to the purpose that it may have appeared afterwards there was no guaranty, for, at the time, the decision was right, and if any injury is done (and it is difficult to perceive in what it consists, when the cause has been tried by persons free even from the suspicion of bias or partiality) it arises from himself in refusing to produce the assignment under which he claimed. A refusal to produce a paper on notice, leaves the party open to every reasonable intendment against himself.

The second and sixth bills have been argued together, and it is supposed the court erred in admitting the evidence, because, as it is said, it contradicted the sheriff's amended return, " stayed by Mr Rhoads attorney." But, unfortunately for the argument, at the time it was admitted, the writ was not in evidence; and, for aught that appears, the court had no knowledge of the return. But apart from this, it was properly received. It was part of the plaintiff's case that the principal inducements to the contract were that the defendant was a judgment creditor, that he was desirous of becoming a purchaser of the debtor's real estate, and for this purpose wished to control the judgments against the assigned property, and that in truth both Rhoads and Dunn were in this matter his agents, although Rhoads was originally the plaintiff's attorney, and as such his name appeared on the record. The entry is, " stayed by Mr Rhoads attorney," without saying whether he was attorney for plaintiff or defendant. He was acting, as he says, for the party in interest, and under his orders; and this is consistent with the return. The evidence was pertinent to show that Dunn, who was said to be a partner with Silvis, and at any rate his attorney, took an active part in postponing the sheriff's sale, and that it was their joint act, or perhaps the act of Dunn or under his immediate directions. It was corroborative evidence of their allegations, and as such we conceive properly received.

The third, fourth, fifth, and sixth bills contained evidence of the acknowledgments of Silvis that he made arrangements with several creditors to obtain the control of the various judgments against Brobst, and also his confession of an intention to purchase the property on speculation. These confessions corroborate the plaintiff's case, and tend strongly to show the consideration of the promise, one of the points involved in the inquiry before the jury.

Seventh bill. The defendant offered in evidence an assignment, dated 26th of March 1840, of a judgment, *The Farmers' Bank of Reading* v. *Valentine Brobst and G. Michael Brobst, and Samuel Ely,* as an equitable defence, and also for the purpose of showing the time when certain conversations took place. The court admitted it for the latter, but rejected it for the former purpose.

III. — 54        2 L *

[Silvis v. Ely.]

Ely died before the date of the assignment, and the suit is brought by the administrator; and if a recovery is had, the money will be assets for the payment of debts. But the effect of admitting the evidence as an equitable defence would be that the assignee would be entitled to a preference; and this would operate to the injury of other creditors. If the defendant has a claim by virtue of his assignment, he is not without remedy. He may recover the whole of it if the estate is solvent, and his proportion if it prove insolvent. The suit arises out of a collateral promise by the defendant, and in no way, that we can perceive, connects itself with the original transaction between the bank and Ely so as to give the defendant an equitable defence.

The court, in the charge, left the facts fairly to the jury; and they, in effect, have found that the defendant, in consideration of forbearance, promised to pay the debt due from the Brobsts. And the first question which arises on the charge is, as to the extent of the authority of the attorney. The intestate employed Mr Rhoads, an attorney-at-law, to collect a debt on which judgment had been rendered; and the attorney made the agreement in question, to assign the judgment to the defendant, in consideration of a promise to pay the amount due to the plaintiffs. Is this contract within the scope of the authority of an attorney? It has been repeatedly said, that the power of an attorney-at-law in this State is more extensive than in England. 1 *Penn. Rep.* 267; 16 *Serg. & Rawle* 368. He is authorized to do those things which pertain to the conducting of the suit; but he has no power to make a compromise, by which land is to be taken instead of money; and it may be added, to convert his client's land into money. 14 *Serg. & Rawle* 309; 1 *Penn. Rep.* 267; 16 *Serg. & Rawle* 368. Thus far his authority is limited; but the case at bar is far short of it. A judgment is but a security for a debt; and although a judgment may be rendered, yet it often happens that the debt is by no means safe, and sometimes even less secure than debts by bond, note, or book-account; and if we decide he exceeds his authority in making this agreement, we must extend the same principle to every debt placed in his hands for collection. There is no dividing line. It is very plain, that by confining the authority of an attorney within such narrow limits, we may impair his usefulness, and often may prevent him from securing a just debt. An attorney has power to stay proceedings, either before suit or after judgment, unless restrained by special instructions. An agreement to stay the proceedings, would be a consideration for a promise by a third person, and the principal would be bound by such a contract, if entered into in good faith. And who can doubt that such an agreement would bind the principal, if he did not express his dissent in a reasonable time. Although he was not informed of the agreement in the case at bar, and of course neither assented nor dissented, yet, by commencing the suit, he

[Silvis v. Ely.]

ratifies the act of the attorney, and, as between them, he is bound, unless the attorney acted in bad faith.   In this extended country, knit together by commercial ties and constant intercourse, and where large debts are constantly contracting and owing by one section to another, we must beware of setting too limited bounds to the salutary discretion of attorneys.   It is in the power of the principal to limit the authority of the attorney, as between themselves, without difficulty; and we may safely trust to their vigilance in seeking out those who are most fit, from their knowledge and honesty, to be intrusted with the transaction of business. The delay of a day may sometimes be fatal to the claim; and as the client most frequently lives at a distance, it may be impossible in time to communicate with him.   It is most prudent, when it can be done, to avoid taking any step out of the usual course of business, without the assent of the principal; but this is a matter of sound discretion, with which third persons have little, if anything, to do.   It is ruled in many cases, that his authority does not cease with the judgment, nor until the money is paid.   It is the duty of an attorney, employed to collect money, to use all proper means to do so in a reasonable time; and if this cannot be done, to secure its payment at some future time.   To perform this duty for the best interests of his client, it is necessary that he should be invested with large discretionary powers.   He may, if he judges it prudent, delay commencing suit, or, if commenced, its further prosecution to judgment.   He may delay issuing execution, or stay proceedings on it; and, if this be done honestly, and with reasonable discretion, without incurring any responsibility to his client.   It may sometimes be, and often is, to the interest of the client that this course should be pursued.   This he may do, without any consideration whatever; much more, then, when it is done at the instance of a third person, under a promise to become answerable for the debt.   But here, it is said, the power claimed for the attorney is still more extensive.   And this is true.   It is to substitute one debt for another; but even this may be, and frequently is for the benefit of the client, even when the debt is well secured by mortgage or by judgment; and much more so, when there are well-grounded fears that the real security is itself in a precarious situation.   As, for example, when there are prior encumbrances, or where the land is not of sufficient value, at a forced sale, to pay the debt.   In *Paxton* v. *Cobb*, (2 *L* . *R.* 140), it is held that the authority of an attorney is not restricted to the mere prosecution of the suit, but extends to everything necessary for the protection of the interests intrusted to his care.   On these grounds, we are of opinion that Mr Rhoads, having acted fairly and honestly, and with a reasonable discretion, has not exceeded his authority in making the contract; and that both parties are bound by it.

There is nothing in the objection that the contract was *nudum*

*pactum.* It is not essential to a consideration that it should be adequate in point of value. It is sufficient if a slight benefit be conferred by the plaintiff on the defendant, or a third person; or even if the plaintiff sustain the least injury, inconvenience or detriment, or subject himself to any obligation, without benefiting the defendant or any other person. Forbearance, either limited or general, is a good consideration, and here the jury have found that in consideration that the plaintiff would forbear and desist from issuing a *venditioni exponas*, and from exposing certain real property to sale, the defendant promised to pay the debt. The defendant either did, or supposed he would derive a benefit from the arrangement, and whether he was disappointed in his expectations, unless the failure was caused by the plaintiff, is of no moment. He is bound by his promise as well on that ground, as because it was a detriment to the plaintiff. On this point, it. has been urged that the *fieri facias* and *venditioni exponas* were irregular and illegal; but admitting them to be so, it does not invalidate the contract. If irregular merely, a sale would be good, and would vest a title in the purchaser, as has been repeatedly ruled. It is incorrect to say, that by forbearance to prosecute irregular process, the plaintiff loses nothing, and that consequently the promise is made without consideration; for a debtor may waive an irregularity, and frequently does so, when he can obtain nothing by delay. It is ungenerous for the defendant, after having all the benefit of the contract, now to take the objection; and besides, the promise to pay was made in consideration of forbearance generally. In *Pell* v. *Stephens*, (8 *Cond. Eng. Chan. Cas.* 23), it is held that where A. as assignee of B., a bankrupt, gave an undertaking to C., who was the mortgagee of one farm, and was under contract to purchase another farm, both the property of the bankrupt, and who had a distress on the mortgaged premises, that if the distress were withdrawn, he would pay to C. the arrears then due, in respect of the mortgage, out of the effects on the premises. C. withdrew the distress accordingly, and afterwards the bankruptcy was annulled, before A. had obtained possession of any part of the bankrupt's effects; whereupon C. brought an action on the undertaking, and recovered a judgment against A. personally. This case is, in some respects, stronger than the case at bar; and certainly shows that there is no want of consideration here, to support the action.

It is said there is error in the answer to the fifth point. Mr Rhoads issued a *venditioni exponas* after the contract, but if this was done at the instance of the defendant, he would still remain bound, unless there was affirmative proof that the parties made another agreement. Rhoads, if his testimony is believed, was acting as the attorney of Silvis, for in no other character had he any control over the judgment, after its virtual transfer to the defendant. It would require a new agreement to re-transfer the

[Silvis v. Ely.]

judgment to the plaintiff, and certainly none such has been found, nor is there any evidence from which it may be inferred. He was obeying the directions of Silvis, as he states, given for the express purpose of carrying out his original design in making the contract.

The above remarks cover, it is believed, the whole ground, and in nothing have we discovered any error. The jury having passed on all the facts fairly left for their decision, we see nothing in the case which would justify us in disturbing the verdict.

Judgment affirmed.