## JOHN GATES *et al.*

### *v.*

## GEORGE HACKETHAL.

1. CONSIDERATION—*agreement for an extension of time.* If a debtor gives his note for an additional sum, upon an agreement for an extension of time for the payment of the original indebtedness, but the agreement specifies no time for such payment, so that it may still be enforced presently, there will be no consideration for the new note.

2. USURY—*what constitutes.* A purchaser of land being unable to meet his payments promptly, executed to his vendor a new note, payable in gold coin, or in United States treasury notes with a premium to be added equal to the difference between the value of gold,and treasury notes, on a certain day, which was largely more than the rate of interest allowed by law. The original contract was payable in treasury notes: *Held,* the new note was usurious, as it gave to the vendor more than the legal rate of interest.

3. CONSIDERATION—*want of.* Where the maker of a promissory note, which is payable in United States treasury notes, not being able to meet the same at maturity, gives another note to his creditor, payable in gold, in order to secure the latter against any loss by reason of the depreciation of treasury notes after the maturity of the original note, and before its payment, the second note given for such purpose will be without consideration.

APPEAL from the Circuit Court of Madison county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Mr. DAVID GILLESPIE, for the appellants.

Messrs. DALE & BURNETT, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that appellant Gates, in February, 1864, sold to appellee a farm for the sum of $10,000, payable $400 in hand, $5,600 on the first of April following, $2,000 at one year from the 24th of February, 1864, and $2,000 two years from that date, the deferred payments to bear ten per cent interest, and to be secured by deed of trust. The first payment was made, the notes and deed of trust were executed and delivered according to the agreement, and Gates executed a conveyance of the farm.

When the first note fell due, appellee, having been disappointed in getting his money from Germany, was unable to meet it, and it was agreed that Gates should not sell the farm under the deed of trust, and appellee was to pay him in gold, or its value on the first day of April, 1864, in United States treasury notes ; and appellee then gave to Gates another note for $5,600, in coin, or in treasury notes with the premium that coin was worth at that date ; in the following August, appellee paid the note first falling due, with interest, and it was surrendered up to him.

In December, 1866, appellee paid to appellant Gates, $4,750, which appellee claims he directed to be paid on the two notes of $2,000 each, but that appellant Gates retained $1,200 as a premium on gold, on the first day of April, 1864, which he claimed was due to him on the note falling due on that date, and then applied the remainder of the sum then paid, on the two notes he still held. Appellant, on the other hand, claims, that when the payment was made in December, 1866, it was through the sons of appellee, and that he then settled with them, and they agreed the money should be applied in the manner he adopted, and they agreed that $1,200 should be the amount of the premium on the gold. This $1,200 produces this controversy.

It is claimed by Gates, that it was paid in consideration of an extension of time for the payment of the first note. On the

other hand, it is insisted, that it was an usurious transaction, and that there was no other consideration for the agreement. It seems to be clear, that the note for $5,600, and the agreement, as it is called, of April 1st, 1864, are for one and the same sum of money ; about this, there is no dispute ; and it would seem, that when the note with interest was paid in full, and it was surrendered up, the whole debt was paid and discharged. The note or agreement of April 1st being for the same debt, and not made, or intended, to be a discharge of the other, was only collateral to it ; and when the principal was paid, the presumption would be that the collateral would be discharged.

It appears, from all the evidence, there was no claim for any sum, as premium, when the note was delivered up to the maker. It seems to us, that as the note was secured and the agreement was not, Gates would then, as he did subsequently, when he says a new note was offered for the last note falling due, have refused to release his security for the $1,200, if he regarded it as due him. Why did he not, as he did when the last payment was made, deduct the $1,200 and credit the balance ? He says it was because one of the sons of appellee promised to pay it when his father's money came from Germany. He was, as he says, unwilling to receive a new note subsequently, because it would have been without security, and he fails to explain why he was willing to permit the $1,200 to remain unsecured.

The note of February 24th, and the note of April 1st, being for the same indebtedness, given at different times, the question is presented as to what was the consideration of the latter. Gates says it was for an extension of time to pay the money on the note already due. We fail to find any agreement proved, that any specific time was agreed upon. From the evidence contained in the record, we fail to perceive there was an agreement that would have prevented Gates from suing on the note of February, at any time. The note of April 1st specifies no time for payment, and being a promise generally,

the law would presume it was payable on demand. This being the legal effect of the note, it was not based on any consideration. It in nowise changed the rights or liabilities of the parties. Had Gates, on delivery of the new note to him, at once demanded its payment, it would have thereby become due. There was not, therefore, an extension of the time of payment, and hence, no new consideration to support the agreement. It was usurious, as it attempted to give appellant more than the legal rate of interest. Or, if we take the other explanation of Gates, that his object was to avoid loss by the depreciation of treasury notes after the maturity of the note, and before its payment, we fail to perceive any consideration to support the new agreement. It appears, that the sale was made for treasury notes, and the price of the land was fixed and agreed upon with reference to payment in such funds. This being the case, and appellant still treating the first note as being so payable, the effect was to render the note payable in a different and more valuable medium—to increase its value—because, when the new note was made, it is conceded that treasury notes, at their par value, would have discharged the debt, and this was some time subsequent to its maturity. Again, had treasury notes appreciated to the standard of gold before payment was made under the new note, appellee was required to pay the amount of treasury notes that gold would have purchased on the first of April. This was an effort to change the contract essentially, and without any consideration, as we have seen. If valid, it would have changed the character of the contract, given Gates new and valuable rights not possessed under the original note, and without any benefit to appellee. We are, therefore, of opinion, that the new note was not binding, and conferred no rights.

It follows, that the account was correctly stated in the court below, and the decree is right, and must be affirmed.

*Decree affirmed.*