MARY J. MORGAN

v.

PARK NATIONAL BANK.

*Negotiable Instruments—Judgment Note.*

1. An agreement to forbear *is a good consideration.* Nor is it necessary that such agreement should be for a definite time; it is sufficient if it be for a reasonable time; but a promise to forbear for a little time, or some time, is too indefinite to constitute a good consideration.

2. It is not necessary that the promise to forbear be at the instance of the person liable to be sued, or be in writing.

3. The holder of a judgment note may agree that he will not have judgment entered thereon for a reasonable time.

[Opinion filed October 24, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. GEORGE H. KETTELLE, Judge, presiding.

Messrs. H. S. PARKHURST and BYAM, WEINSCHENK & HIRSCHL, for appellant.

Mr. E. A. SHERBURNE, for appellee.

WATERMAN, J. On February 11, 1890, one C. P. Morgan borrowed $500 of the Park National Bank and gave his thirty day judgment note therefor. A few days before the

note matured, appellant, the mother of C. P. Morgan, at the instance of the bank, called at its office, and after a conversation with its president signed the note as one of the makers thereof. A few days thereafter, C. P. Morgan, who was seriously ill when his mother signed the note, died. Some two years afterward, the bank caused judgment to be entered against Mary J. Morgan upon this note.

She made a motion to have the judgment vacated, and in support thereof, filed her affidavit, setting forth that not being then in any way a party to the note, "a few days prior to the date of the maturity of said note, the said Park National Bank sent me word to call at the bank and I did call, and was then and there informed by C. P. Packer, the president of said bank, that they heard that the said Charles Morgan was seriously sick, and that the said bank would feel easier in relation to the said note if I should affix my name thereto. And I do state that by reason of the premises I did then and there affix my name to the said note at the said request of the bank, and that there is no other fact or circumstance or reason or consideration for such affixing of my name to said note excepting as heretofore recited. And I do state further that the said Charles Morgan died within three or four days of the time at which I so affixed my name."

Thereupon the bank filed the affidavit of its president setting forth that the Park National Bank did send word to defendant, requesting her to call at said bank, and when she had complied with said request, affiant told her that they heard of the serious illness of her son, Charles P. Morgan; that the note which the bank had discounted for said Charles P. Morgan was then nearly due, and that the bank, in order to secure itself, would be compelled to enter judgment on said note, and take possession of the said Charles Morgan's business, unless some further security was given for the payment of the same. Defendant then told affiant that she did not desire the bank to take such action. She further stated that if the bank would wait a reasonable time she would sign the note herself, and pay the note herself, and thereupon the plaintiff agreed that if she would do so, it would

so wait, and she accordingly did sign said note then and there. In consideration of her so doing the bank waited more than two years after that time, and then called upon defendant to pay said note; she refused to do so, and thereupon this judgment was entered." These affidavits were each filed July 12, 1892. The court on July 15, 1892, denied appellant's motion. From the order refusing to vacate the judgment, she prosecutes this appeal.

Appellant, it will be observed, did not in her affidavit claim to have set forth the entire conversation between her and the president of the bank; she merely says that she was informed by the president of the bank "that they had heard that the said Charles Morgan was seriously sick, and that they would feel easier in relation to the said note" if she should affix her name thereto. As to what else was then said to her, she makes no statement, but goes on to say that by reason of the premises she did then and there affix her name to the note, and that there is no other fact or circumstance or reason or consideration for such affixing of her name. This is a mere statement of, as she now recalls, the reasons that then existed in her mind as to the consideration moving to her; or of the consideration, thought, or reasons in her mind in respect to her signing.

What she should have given was a full and exact statement of all that passed, was said, and done between her and the bank relative to said note and her signing. From this the court could have judged whether there was a valid consideration for her signing. The question presented to the court was not what she thought about signing, but what was said and done by each of the parties. It is inconceivable, indeed she does not pretend, that she thought that by signing the note as a maker, she thereby entered into no obligation, made herself liable for nothing at all; and it is equally inconceivable that the bank took her signature believing that thereby she did not become bound. Was the transaction such, that after all, both parties were mistaken, and that her signing was an idle and useless ceremony?

An agreement to forbear is a good consideration. Nor is it necessary that the agreement to forbear should be for a

definite time; it is sufficient if it be for a reasonable time; although a promise to forbear for a little time or some time, it has been held, is too indefinite to constitute a good consideration. 1 Chitty on Contracts, 11 Am. Ed. 40–41; Daniels on Negotiable Instruments, Second Ed., 678–679; 1 Parsons on Contracts, Sixth Ed., 440–444; King v. Upton, 4 Greenleaf (Me.) 387; Lonsdale v. Brown, 4 Wash. C. C. 148; Hakes v. Hotchkiss, 23 Vt. 231.

It is not necessary that the promise to forbear be at the instance of the person liable to be sued. 1 Parsons on Notes and Bills, Second Ed., 198; King v. Upton, *supra;* Jenison v. Stafford, 1 Cush. 168; Silvis v. Ely, 3 Watts & S. 420; Giles v. Ackles, 3 Penn. St. 147.

It is insisted by appellant that there was no valid agreement for forbearance, because the bank continued to hold the note of C. P. Morgan, upon which, by its terms, judgment could have been entered at any time. No reason has been given and none occurs to us, why the bank might not, notwithstanding the form of the note, agree that it would not have judgment entered, or bring suit thereon. It was not necessary that such agreement should be in writing, and we see no reason why such agreement would not be as binding upon it, as would have been its agreement to accept the note of appellant in full payment and satisfaction of the note of C. P. Morgan.

Is there any doubt that had it under such agreement received the note of appellant, it would have been precluded from maintaining suit upon the obligation of C. P. Morgan?

We think that having received a valid consideration therefor, viz., the note of appellant, the bank was under an obligation to forbear, as it undertook to do and did, for a reasonable time. It is perhaps the case, as is urged, that it might have entered judgment at once against appellant, but its right to have judgment entered against C. P. Morgan before the lapse of a reasonable time, was gone; and had it at once brought suit against C. P. Morgan, we see no reason why a plea in abatement might not have been maintained thereto. Culver v. Johnson, 90 Ill. 91.

It is true that by the terms of the note signed by C. P.
Morgan, judgment might have been entered against him at
any time; but this right possessed by the bank as the holder
of the note, was one which it could relinquish and could
make a valid contract not to enforce; this it did.   After its
agreement with appellant its right, before the lapse of a
reasonable time, to enter judgment against C. P. Morgan,
was as completely gone as would have been its right to enter
judgment against him had appellant paid the note and left
the same in its hands.

We do not regard the cases cited by appellant as estab-
lishing any different rule.

In Alldritt v. First Nat'l Bank, 22 Ill. App. 24, the agree-
ment was only to extend the time of *payment* for one year.
The entry of judgment would not necessarily deprive the
maker of the benefit of this extension.   The maker moved,
not, as he might, for a stay of execution until the note
matured under the new agreement, but to set aside the
judgment.

It may be noticed that in that case the note was a sealed
instrument, and specially provided that no extension of the
time of payment should release the makers from the obli-
gation of payment; the defense interposed was apparently
an attempt to set up a parol agreement varying the terms
of an instrument under seal.   Hennessy v. Hill, 52 Ill. 281,
was a proceeding against special bail, the court finding that
there was no consideration for the undertaking.

In Martin v. Stubbings, 20 Ill. App. 381–392, the court
say that the note, being given April 16th, and dated back
to January 1st, and made payable *one* day after date, was
due the instant it was made, and was in no sense a forbear-
ance of the debt by the debtor.

In Gates v. Hackethal, 57 Ill. 534, the debtor gave a
new note, payable on demand, for a larger amount than the
old indebtedness; the debtor insisted that the increase was
for usury; the creditor that it was for forbearance; the
court say that it can not have been for forbearance, because
being payable at once, no time was given.

Appellant may not have received anything of value for

signing the note; there may not have been any considera-
tion moving to her, but there was a consideration moving
from the bank.   Having a note nearly due, upon which it
would be entitled in a few days to bring suit, and upon
which it might have had judgment entered at once, it
informs appellant that having heard of the serious illness of
Charles P. Morgan, it would, in order to secure itself, be com-
pelled to enter judgment on the note and take possession of
his business unless further security for its payment was
given.   Appellant then told the bank that she did not desire
it to take such action; that if it would wait a reasonable
time she would sign and pay the note herself; thereupon
the bank agreed that if she would do so, it would so wait,
and she signed the note; the bank waited two years before
bringing this suit.   Its condition was under its agreement
materially changed; the death of Charles P. Morgan de-
prived it of the opportunity it possessed, to have entered
judgment against him, and thereunder to have made its
debt a lien upon his property; waiving this right it suffered
itself to come into the category of those whose claims
against his estate can only be allowed as of the seventh
class.

It is said that at least the court should have submitted
the disputed facts to a jury.   We do not think that the affi-
davits show any dispute as to material facts.   Appellant
states a part of the conversation and what thoughts influ-
enced her; the affidavit filed by the bank sets forth addi-
tional matter not necessarily inconsistent with what appel-
lant alleges.   All of each of the affidavits may be true.   It
does not follow that appellant was guilty of perjury if Mr.
Packer only told the truth; her affidavit can, upon such
hypothesis, be said to be no more than misleading.

Three days elapsed after the filing of the bank's state-
ment, ere the motion was decided; meantime appellant
made, as she might, no denial of the truthfulness of what
had been said in reply to her affidavit.   Truby v. Case, 41
Ill. App. 153.

The court below was therefore justified in taking the

statements made in the affidavit of Packer as true, and consequently in refusing to vacate the judgment.

The order of the Superior Court denying the motion to vacate is affirmed.

*Order affirmed.*